## Hanover Township Civic Assn. v.
## Hanover Township

*Charles P. Dugan*, for appellants.
*John J. Lamb & Carl K. Zucker*, for intervenor.
*Donald Corriere*, for appellee.

FRANCIOSA, J., November 20, 1974—On June 26, 1973, the Board of Supervisors of Hanover Township adopted a planned residential development ordinance (PRD). These consolidated cases challenge the action taken by that governing body.

In no. 414 May term, 1973, certain residents, individually, and as members of a civic association,[1] contend that the PRD is invalid because of procedural defects.

In no. 399 October term, 1973, the same parties appear as petitioners and there question the validity of the PRD on substantive grounds.

The township is the respondent in both cases. In addition, there are intervenors. Mary Angelis and Robert Holland, nominee purchasers for Oeste Corporation (Oeste), and F. Gerald Toye, Anna F. Toye, John N. Rodgers and Georgine Rodgers (Toye) have intervened. As landowners in the township, Oeste and Toye join the township in seeking affirmation of the PRD. With regard to Oeste, the validity of the ordinance is advanced without qualification. However, Toye asks us to modify the ordinance before stamping it with our approval.

In no. 414, supra, we are dealing with the power of the board of supervisors to enact a PRD ordinance. In no. 399, supra, a decision of the zoning board is before us. But, not having taken additional testimony, our duty is to determine whether an abuse of discretion or an error of law is involved in either case. See Brauns v. Swarthmore Borough, 4 Pa. Commonwealth Ct. 627, 288 A. 2d 830 (1972);

1. The recent decision of the Commonwealth Court in Northampton Residents Association v. Northampton Township Bd. of Supervisors, 14 Pa. Commonwealth Ct. 515, 322 A. 2d 787 (1974), interposes a problem of standing on the part of the association. However, the appeals survive since the named individuals have standing on their own to maintain these proceedings.

DeFeo v. Brookhaven Borough, 3 Pa. Commonwealth Ct. 377, 283 A. 2d 505 (1971). We will proceed with the making of such a determination. In so doing, we will follow the format of discussing the issues under separate headings.

## THE RELATIONSHIP BETWEEN THE COMPREHENSIVE PLAN AND THE PRD ORDINANCE

After the PRD ordinance was passed by the board of supervisors, petitioners filed an appeal with the township's zoning hearing board. In that appeal, the zoning board was requested to disapprove the PRD ordinance for the expressed reason that it was inconsistent with the township's comprehensive plan. The zoning board first concluded that the questions raised by petitioners were procedural and not substantive. Nonetheless, the zoning board went on to make the following finding:

"It is clear, therefore, that the failure of the PRD ordinance in the instant case to conform with every minor nuance of language within the comprehensive land use plan is of no consequence and is insufficient to support a finding that the PRD ordinance is thus invalid."

Petitioners now urge this court to set aside the zoning board's conclusion that the PRD ordinance was not controlled by the comprehensive plan.[2] We cannot.

It is true that Hanover Township had adopted a comprehensive land use plan on December 29,

_____

2. We have already noted that two separate appeals were filed in this court. The issue now under discussion is the subject matter of the appeal indexed as no. 399 October term, 1973.

1972, and that enactment of the PRD ordinance followed approximately six months later on June 26, 1973. Nevertheless, the argument that a PRD ordinance must be consistent with a pre-existing comprehensive plan falls in the face of several recent holdings of our appellate courts.[3]

The Supreme Court in Village 2 at New Hope, Inc., Appeals, 429 Pa. 626, 632-633, 241 A. 2d 81, 84 (1968), rejected the lower court's reasoning that a planned unit development had to be in accordance with a comprehensive plan. The Supreme Court stated:

"The fallacy in the court's reasoning lies in its mistaken belief that a comprehensive plan, once established, is forever binding on the municipality and can never be amended. Cases subsequent to Eves have made it clear, however, that these plans may be changed by the passage of new zoning ordinances, provided the local legislature passes the new ordinance with some demonstration of sen-

---

3. The township suggests that we need not reach the merits of the argument regarding the relationship between the comprehensive plan and the PRD ordinance. Relying on Roeder v. Hatfield Boro. Council, 439 Pa. 241, 266 A. 2d 691 (1970), and its progeny, the township points out that no application for a PRD is pending in the municipality and, therefore, any protest against the ordinance is premature. Ripeness is an elusive concept. See "Krasnowiecki, Zoning Litigation and the New Pennsylvania Procedures," 120 U. Pa. L. Rev. 1029 (1972). Here, we are dealing primarily with a question of law raised by individual landowners in the township. Their objection to the ordinance concerns its impact on the municipality as a whole, rather than the way it is to be applied to any particular tract. Thus, a specific application for a PRD will not serve further to illuminate the legal issue as already framed for us. For that reason, we choose to treat the challenge based on the role of a comprehensive plan as one ripe for adjudication.

sitivity to the community as a whole, and the impact that the new ordinance will have on this community. As Mr. Chief Justice Bell so artfully stated in Furniss v. Lower Merion Twp., 412 Pa. 404, 406, 192 A. 2d 926, 927 (1963): 'It is a matter of common sense and reality that a comprehensive plan is not like the law of the Medes and the Persians; it must be subject to reasonable change from time to time as conditions in an area or a township or a large neighborhood change.' This salutary rule that comprehensive plans may be later amended by the passage of new zoning ordinances has been approved not only in Furniss, but also in Donahue v. Zoning Bd. of Adjustment, 412 Pa. 332, 194 A. 2d 610 (1963) and Key Realty Co. Zoning Case, 408 Pa. 98, 182 A. 2d 187 (1962)."

The conclusion that the Hanover Township Board of Supervisors was under no legal requirement to adhere to the township's comprehensive plan is further supported by the post Village 2 decisions of the Commonwealth Court.

In Morelli v. Borough of St. Marys, 1 Pa. Commonwealth Ct. 612, 617, 275 A. 2d 889, 891-892 (1971), the Commonwealth Court wrote:

". . . The comprehensive plan does not have the legal effect of a zoning ordinance, which actually regulates the land use as may be recommended by the comprehensive plan. The planning commission may recommend all kinds of desirable approaches to land utilization and development. Not all of these may become eventually legally enforceable in a zoning ordinance. In other words, a comprehensive plan is abstract and recommendatory; whereas, the zoning ordinance is specific and regulatory."

Then came Saenger v. Planning Commission of

Berks County, 9 Pa. Commonwealth Ct. 499, 308 A. 2d 175 (1973). In that case, the Commonwealth Court identified its decision in Morelli as controlling; moreover, the Commonwealth Court emphasized that a comprehensive plan does not have the legal effect of a zoning ordinance. In that connection the following appears at Pa. Commonwealth, page 502 (A. 2d, page 176):

"We cannot equate a comprehensive plan with a zoning ordinance, as they are indeed different. In Penny v. Board of Supervisors of Warrington Township, 53 Pa. D. & C. 2d 329, 332 (1971), President Judge Satterthwaite logically wrote: 'It is inherent in the recommendatory nature of the comprehensive planning concept that it neither can nor does have any specific or litigable impact such as to provide any practical or realistic occasion for judicial intervention. The formulation and adoption of a comprehensive plan are but intermediate and inconclusive steps in the planning process, and in themselves are legally ineffective.'"

Finally, the abstract and recommendatory nature of a comprehensive plan was reasserted in Doran Investments v. Muhlenberg Township, 10 Pa. Commonwealth Ct. 143, 309 A. 2d 450 (1973). There the Commonwealth Court said:

"Ordinance No. 106 by providing for planned residential developments without limitation as to location authorizes that use throughout the township. The provision of Ordinance No. 106 and of Section 703 of the MPC, 53 P. S. §10703, that the ordinance and every application for approval of a planned residential development 'shall be based on and interpreted in relation to the comprehensive plan,' do not mean that the ordinance and such application

are to be controlled by the comprehensive plan. Such an interpretation would give the comprehensive plan a force and effect that it simply does not possess under Pennsylvania law. As Village 2 at New Hope teaches, Ordinance No. 106 can be taken as amending the comprehensive plan."

We realize that Village 2, supra, was decided before the Municipalities Planning Code (MPC) of July 31, 1968, P.L. 805, 53 PS §§10101, et seq., became effective. We also acknowledge that Village 2 was shaped by Furniss v. Lower Merion Township, 412 Pa. 404, 194 A. 2d 926 (1963), an even earlier pre-code case.[4] Moreover, it has not escaped our attention that some legal writers have concluded that Village 2 was no longer controlling under the provisions of the MPC as originally enacted.[5]

But whatever significance could once be attached to the difference between the decisional law and the MPC has now become academic. While the

4. Furniss was the pre-code seed decision indicating that so long as a zoning ordinance was rational in a planning sense, the fact that it violated the terms of an existing plan did not invalidate the change. Such reasoning was picked up in Village 2, supra, another pre-code case; then, Village 2 was cited as authority in the post-code cases down to Doran, supra.

5. For example in Ryan, Pennsylvania Zoning, §3.2.11, the following comment on the 1968 MPC appears:

"It is true that the Municipalities Planning Code requires conformance only with the 'spirit and intent' of the comprehensive plan, a phrase which would permit deviations from its letter. In addition, the municipal legislative body should be accorded a considerable discretion in defining the 'spirit and intent' of the plan. Nevertheless, Code §303 would seem to require that a zoning ordinance or amendment follow the comprehensive plan, and indicates that a zoning amendment which is in flagrant violation of that rule is invalid."

1968 version of section 10303 of the code required the "governing body" to specifically find all zoning ordinances to be "in accordance with the spirit and intent of the formally adopted portions of the comprehensive plan," the 1972 revision of that section states only that the "planning agency" must submit a statement "as to whether or not the proposed action is in accordance with the intent of the formally adopted comprehensive plan." See 53 PS §10303, as amended (1972). The significance of this change is apparent when section 303 is read in the light of section 105. Section 105 makes clear that all recommendations of a planning commission are "advisory only": 53 PS §10105; see also, Ryan, supra, §2.2.

As a result of the 1972 revision to the MPC, all authorities interpret the present statutory provisions in the following manner:

"Accordingly the law reverts to its pre-Code position: that is, a zoning amendment which is rational in a planning sense is valid even though it violates the terms of an existing comprehensive plan." See Ryan, supra. 1972 Supplement, §3.2.11.

The 1972 amendments became effective 60 days after enactment. Bearing the date of June 1, 1972, these revisions took effect on or about August 1, 1972. As previously noted, the ordinance in question was enacted on December 29, 1972. It is therefore governed by the 1972 revisions to the MPC. Using the 1972 version of the MPC as our measuring rod, we find no evidence in the instant record indicating that the ordinance under examination lacks rationality in a planning sense. Instead, petitioners would have us declare the zoning ordinance invalid "because it conflicts with the state-

ment of development goals in the township's comprehensive plan." We refuse to do so.

Neither the statute, in its present form, nor the applicable case law, requires a PRD ordinance to be controlled by the abstract and recommendatory expressions contained in a comprehensive plan.

## IMPACT OF A PROCEDURAL DEFECT IN THE INTERMEDIATE PLANNING PROCESS

In their appeal designated as no. 414 May term, 1973, petitioners contend that the PRD ordinance "is invalid because of a defect in the process of its enactment."

The thrust of petitioners' argument with respect to the procedural challenge to the PRD ordinance is that its passage was not in compliance with section 303 of the MPC, 53 PS §10303, which provides:

"Whenever the governing body, pursuant to public notice, has adopted a comprehensive plan or any part thereof, any subsequent proposed action of the governing body shall be submitted to the planning agency for its recommendations when the proposed action relates to:

" . . .

"(3) The adoption, amendment or repeal of . . . planned residential development ordinances.

"The recommendations of the planning agency including a specific statement as to whether or not the proposed action is in accordance with the intent of the formally adopted comprehensive plan shall be made in writing to the governing body within thirty days."

It is undisputed that the board of supervisors referred the PRD ordinance to the township's planning agency prior to its passage. However, the record reveals that the Hanover Township Planning

Commission did not, in turn, make recommendations which included a specific statement "as to whether or not the proposed action" was "in accordance with the intent of the formally adopted comprehensive plan." Petitioners urge us to charge this omission on the part of the planning commission against the board of supervisors, and find that departure to be grounds for disapproving the PRD ordinance.

Such a collateral attack is no more acceptable than the frontal assault earlier proposed by the petitioners. Their interpretation of procedural requirements once again would give the intermediate planning process a force and effect it simply does not possess under current Pennsylvania law. Putting it another way, we fail to see how the purely recommendatory actions of a planning agency can be enlarged to mandatory proportions by the advisory body's own procedural deviations. Can we be so incongruous in our reasoning so as to find that a board of supervisors is under no legal requirement to adhere to a specific statement of a planning commission, but at the same time find that the board's ultimate legislative powers may be impaired by an advisory body's silence? We think not.[6]

## INTERVENTION BY TOYE

The remaining issue before us is raised by intervenors we shall refer to as "Toye." Initially, we note

6. In saying this, we do not mean to condone or encourage any failure to adhere to statutory obligations by local planning commissions even those of a "procedural" nature. Similarly, we might have reached a different result had the omission here been that of the township supervisors in failing to refer the ordinance to the planning commission for recommendations.

that Toye does not contest passage of the PRD ordinance. What Toye seeks is a modification in the terms of the ordinance. If the requested modification is granted, contiguity of land would be eliminated as a condition for planned residential development. And certain non-contiguous acreage owned by Toye would then become eligible for development as a PRD unit.

At the moment, the court does not have to concern itself with Toye's request for a modification. Until a landowner attempts to use his land in a certain way, a protest against a restriction is premature. See Roeder v. Hatfield Borough Council, supra; also, Northampton Residents Association v. Northampton Township, supra. Since Toye has not sought nor been denied the right to engage in PRD activities, nothing has happened under the ordinance to involve that intervenor in a case or controversy ripe for adjudication. In our opinion, the intervention by Toye is patently premature and amounts merely to an attempt to obtain an advisory opinion.

## ORDER

And now, November 20, 1974, in accordance with the reasons set forth in the foregoing opinion, we enter the following order:

1. The appeal of Hanover Township Civic Association and Joseph Hilton, Charles Dugan and John Feehan, individually, designated as no. 399 October term, 1973, and challenging the substantive validity of PRD ordinance 73-4, is denied and dismissed.

2. The appeal of Hanover Township Civic Association and Joseph Hilton, Charles Dugan and

John Feehan, individually, designated as no. 414 May term, 1973, and challenging the procedural validity of PRD ordinance 73-4, is denied and dismissed.

3. The petition to intervene filed by Toye, insofar as such intervention was for the purpose of obtaining a modification in the terms of PRD ordinance 73-4, is denied and dismissed.

4. The parties are directed to pay their respective costs.