Opinion by
Judge Wilkinson,
This case concerns a planned unit development (P.U.D.) ordinance enacted by O’Hara Township in accordance with Article VII of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, as amended, 53 P.S. §10701 et seq.
Appellee is the owner of a tract of land in O’Hara Township, Allegheny County, upon which he desires to build two ten-story high rise apartment buildings, providing a total of 294 apartments. The tract consists of two parcels of ground: parcel No. 1, being 2.949 acres fronting on the east side of East Oak Hill Road; parcel No. 2, being 14.566 acres opposite parcel No. 1 on the other side of East Oak Hill Road and bounded on the west by Fox Chapel Road.
On November 28, 1973, appellee submitted plans and an application for tentative approval of a planned unit development to the O’Hara Township Planning Commission which recommended to appellant that tentative approval be granted subject to seven conditions. On February 11, 1974, pursuant to Section 708 of the Pennsylvania Municipalities Planning Code, 53 P. S. §10708, a public hearing was held. This meeting was heavily attended by area residents who strongly opposed the tentative approval of the P.U.D.[1] On March 5, 1974, *666 appellant, in a unanimous written opinion, denied tentative approval.
Appellee appealed this denial to the Allegheny County Court of Common Pleas which, on October 15, 1974, sustained the appeal and ordered appellant to grant tentative approval to the proposed P.U.D. subject only to the conditions previously imposed by the planning commission. Appellant has appealed to us.
The court below took extensive additional evidence including numerous exhibits, over 500 pages of testimony, and a view of the property, and, therefore, was not limited merely to a review of whether appellant abused its discretion or committed an error of law, but rather, properly made its own findings of fact and conclusions of law. Garbev Zoning Case, 385 Pa. 328, 122 A.2d 682 (1956); Pantry Quik, Inc. v. Zoning Board of Adjustment of the City of Hazleton, 1 Pa. Commonwealth Ct. 326, 274 A.2d 571 (1971). Our duty is now to review the action of the lower court for abuse of discretion or error of law.
We find that the court below did commit error and although we must reverse, we note that that court’s opinion by Judge Silvestri contains an excellent discussion and analysis of the history and purposes of Article VII of the Pennsylvania Municipalities Planning Code. We further note that our brother Judge Roger’s opinion in Doran Investments v. Muhlenberg Township Board of Commissioners, 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973), also contains an in-depth analysis of applicable law, and is virtually on all fours with the instant appeal.
Appellant, in its written communication to appellee, required by Section 709 of the Pennsylvania Municipalities Planning Code, 53 P.S. §10709, denied tentative ap *667 proval primarily because the proposed P.U.D., in appellant’s view, would increase traffic on Fox Chapel Road, would increase the township’s population so as to put a strain on municipal services, and would not fit in with the township’s “present and future development.” The lower court correctly ruled that such reasons cannot be the basis for refusing tentative approval but rather would be appropriate conditions to be attached to the grant of tentative approval in accordance with Section 709. See Doran, supra, 10 Pa. Commonwealth Ct. at 157-58, 309 A.2d at 458.
The two main issues raised on appeal here involve lot size and building size requirements. Appellee has never challenged the validity of these requirements and, therefore, the question before us is whether the court below erred in holding that appellee’s plans conformed to these requirements.
O’Hara Township’s Multi-Family and Planned Unit Development Ordinance created a new subdistrict within the existing R-2 Residential District, called R-2M, defined as follows:
“R-2M Multi-Family Dwelling Subdistricts: Saxonburg Boulevard (any property fronting on and having access to Saxonburg Boulevard.) Fox Chapel Road (any property fronting on and having access to Fox Chapel Road from Commercial District to Squaw Valley Park.)”
The only permitted uses in an R-2M subdistrict are (1) any use permitted in an R-2 Residential District and (2) a Planned Unit Development. The ordinance then goes on to require:
“Area: The area of land to be developed is not less than fifteen (15) acres in the R-2M Subdistricts.
Appellant argues that only the 14.566 acres of parcel No. 2 front on or have access to Fox Chapel Road and, therefore, there is not sufficient area for the development *668 of a P.U.D. Appellee, of course, contends that the 2.949 acres of parcel No. 1 were properly included in the total area of the proposed P.U.D.
The record discloses that the total tract of 17.515 acres had been a single unified tract of land until 1962, when the Commonwealth of Pennsylvania condemned a portion of the land in order to relocate East Oak Hill Road. It was this condemnation that divided the tract into the two parcels. Appellee’s grantor, who had owned the unified tract since 1950, conveyed the entire 17.515 acres to appellee in 1969 in one deed, albeit containing separate descriptions for each parcel. In his application for tentative approval, appellee restricted parcel No. 1 to remain as open, undeveloped land.
The authority to condemn, granted by Section 210 of the State Highway Law, Act of June 1, 1945, P. L. 1242, as amended, 36 P. S. §670-210, is limited to the condemnation of an easement of right of way and an easement of support or protection. Appellee’s grantor owned the entire fee and it was he who granted (or from whom was taken) the easement. See Mentha Corporation v. Zoning Board of Adjustment of the City of Philadelphia, 1 Pa. Commonwealth Ct. 415, 275 A.2d 427 (1971). The fee of the entire tract, subject to the easement, remained in appellee’s grantor and was conveyed to appellee. We hold, therefore, that the court below was correct in finding that the area to be developed was properly considered as being the entire 17.515 acres.
The P.U.D. portion of the zoning ordinance also contains the following requirement: “Building Size — All buildings shall be less than two hundred fifty (250) feet along any dimension” and further requires that each building be at least 30 feet from any other building. Appellee proposed to construct two buildings, each shaped basically like the following diagram (not to scale)[1]:

*669

The building is 88 feet wide (from A to B and from F to E) and is 457 feet in overall length (from AB to FE). No straight-line face of the building is greater than 228 feet (e.g., B to C, or D to E), the overall length being broken by a “jog,” or set back, of 30 feet (D to C). Each building has common hallways, common elevators and common recreational facilities.
The court below found that each building was actually two separate buildings abutting each other with a 30-foot offset. This was error. Common' sense and the overwhelming weight of the evidence can support only the conclusion that each building is in fact one building with a length[2] of 457 feet. Such a building is in violation of the above quoted building size requirement.
Our disposition of this case, however, hinges on one further factor. Section 709(b) of the Pennsylvania Municipalities Planning Code, 53 P. S. §10709 (b), requires that the governing body “set forth with particularity” the reasons for the denial of the tentative approval. Nowhere in appellant’s written communication to appellee *670 is the departure from the building size requirement mentioned as a reason for denying tentative approval, even though it is clear from the face of that communication that appellant was aware of the overall length of each building. This issue was raised for the first time in the de novo appeal below. Appellee has indicated that each building can be separated into two buildings 30 feet apart and thus comply with the ordinance.
Rather than order that tentative approval be granted conditioned only on compliance with the building size and 30-foot separation requirements, and because specific conditions which might be appropriately attached to a grant of tentative approval have not been considered by appellant, we remand in order to afford appellant the opportunity to look at the proposed P.U.D., not for grounds upon which it might be denied, but for specific conditions which might, in the public interest, be attached to its tentative approval. See Doran, supra, 10 Pa. Commonwealth Ct. at 160, 309 A.2d at 459.
Accordingly, we enter the following
Order
Now, June 16, 1975, the order of the court below, dated October 15, 1974, is hereby reversed. The record is remanded with the direction that the plan of appellee be granted tentative approval subject to its compliance with the requirements of Section 600A.1 (d)(6) and (7), of the O’Hara Township Multi-Family and Planned Unit Development Ordinance and subject to such other specified conditions as appellant shall require; provided, however, that such added conditions shall be reasonable, economically feasible, and consistent with this opinion.

. Because of the large number of people who arrived at the originally scheduled meeting place, the location of the meeting had to be changed, at the last minute, to a larger meeting hall. Appellee has asked us to quash the instant appeal because the meeting was not held at the place publicly advertised and, therefore, was in violation of the Act of July 19, 1974, P.L. -, Act No. 175, 65 *666 P. S. §261 et seq. Appellee was in fact represented at the relocated meeting and has not alleged nor shown any prejudice due to the relocation and, accordingly, said motion to quash is denied.

. Webster’s Third New International Dietionary (15th Ed., 1966) gives the following definitions:
“Dimension: ... a measure in a single line (as length, breadth, height, thickness, or circumference) ... the physical characteristic of length, breadth, or thickness (a line has one dimension (length), a plane has two dimensions (length and breadth), and a cube has three dimensions (length, breadth, and thickness))....”
“Length: . . . the longer of the 2 straight-line dimensions of a surface or plane ... extent from end to end...