In Re: Appeal of Lewis W. Molnar From the Refusal of the Council of the Borough of Bethel Park To Grant a Tentative Approval for a Planned Unit Residential Development Known as "Lemon Tree". Municipality of Bethel Park, Appellant.

Argued October 7, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS and BLATT, sitting as a panel of three.

*Victor R. Delle Donne, Baskin and Sears, P.C.*, for appellant.

*Lenard L. Wolffe*, with him *Stanley A. Uhr, Pechner, Dorfman, Wolffe, Rounick & Cabot*, for appellee.

580

Opinion by Judge Blatt, February 18, 1982:

The municipality of Bethel Park (Borough) appeals here from an order of the Court of Common Pleas of Allegheny County by which it was directed to grant unconditional tentative approval to the application of Lewis W. Molnar (developer) for a planned unit residential development (PURD).

In September of 1975 the Borough enacted a Planned Unit Residential Ordinance pursuant to Article VII of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10701-10711.[1] The developer applied thereafter to the Borough Council for tentative approval of a PURD to be known as Lemon Tree Village. The Borough's Planning and Zoning Commission recommended that tentative approval be granted, subject to the resolution of drainage and grading problems to the satisfaction of the Borough Engineer and the Department of Environmental Resources, but, after subsequent extensive public hearings, the Borough Council denied the application.[2] On appeal, the Court of Common Pleas of Allegheny County, after taking additional evidence including a view of the property, remanded the matter to the Borough Council for reconsideration consistent with its opinion.[3] The Borough

[1] In availing itself of the grant of power afforded it under Article VII of the MPC to enact ordinances fixing standards and conditions of planned residential development (PRD), the Borough here chose to use the terminology Planned Unit Residential Development (PURD).

[2] The Borough Council had denied the application on the basis of insufficient land devoted to active recreational use, inadequate storm water drainage, increased traffic volume, close proximity of dwelling units to a stream, increased density, and limited public street accessibility for certain dwellings.

[3] The Court of Common Pleas of Allegheny County concluded that the density and public street accessibility concerns involved did not violate the municipal ordinance, but held with regard to the

then appealed to this Court which quashed the appeal as interlocutory and ordered that the matter be remanded to the Borough Council for further proceedings consistent with the guidelines set forth in this Court's opinion and with the directives of the lower court.[4] On remand, following a hearing at which the developer presented evidence concerning the three issues listed for reconsideration, the Borough Council, after considering the entire record, including all submissions made by the developer since filing his application, again denied the application. The developer once again appealed to the Court of Common Pleas which, without taking additional evidence, again reversed the

remaining counts that inasmuch as it was not clear whether the present plan was capable of establishing the requisite ten percent (10%) of its total land area for active recreational use without amendment and as the Borough Council did not have the benefit of the developer's rechanneled stream layout and 25 year storm drainage system, it was necessary to remand the matter to the Borough Council for a determination of these factors and for proper action in accordance with the court's opinion.

[4] *Municipality of Bethel Park Appeal*, 51 Pa. Commonwealth Ct. 128, 414 A.2d 401 (1980). In remanding the matter to the court below, this Court provided the following guidance:

> The Borough Council should first evaluate the mandated purposes of the MPC and the Bethel Park Zoning Ordinance with the 'public interest' concerns of MPC Sections 707 and 709(b) for tentative PURD approval. The Council should also carefully consider our decisions in Doran Investments v. Muhlenberg Township Board of Commissioners, 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973), and O'Hara Township Board of Commissioners v. Hakim, 19 Pa. Commonwealth Ct. 661, 339 A.2d 905 (1975), and thereby determine whether the PURD deficiencies constitute conditions to be attached to tentative approval or provide sufficient grounds for complete refusal.

*Id.* at 132, 414 A.2d at 402-03 (footnotes omitted).

Borough Council and ordered it to grant unconditional tentative approval. This appeal followed.

The task presently before us is to review the second decision of the court below. And where, as here, that lower court has taken no additional evidence, our review is limited to a determination of whether or not the Borough Council committed an abuse of discretion or an error of law and whether or not its findings of fact were supported by substantial competent evidence. *Soble Construction Co. v. Zoning Hearing Board of the Borough of East Stroudsburg*, 16 Pa. Commonwealth Ct. 599, 329 A.2d 912 (1974).

The Borough contends that the developer's application was demonstrably adverse to the public interest and that, therefore, the Borough neither abused its discretion nor committed an error of law in rejecting it. It argues that the plan's inconsistency with the Borough's comprehensive plan, its substantial departure from existing land use regulations otherwise applicable to the subject property, its incongruity with the character of the surrounding neighborhood and the serious storm water and traffic problems posed by construction of a development of this type on the particular site, when viewed cumulatively, comprise public interest objections sufficiently substantial and exceptional in nature to support denial of the application under the standards set forth by this Court in *Michaels Development Co. v. Benzinger Township Board of Supervisors*, 50 Pa. Commonwealth Ct. 281, 413 A.2d 743 (1980), and *Doran Investments v. Muhlenberg Township Board of Commissioners*, 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973).

In *Michaels*, however, we recognized that, although we had specifically limited our holding in *Doran* to "*this* governing body in denying tentative approval to *this* conforming Article VII plan," *Doran*, 10 Pa. Commonwealth Ct. at 159, 309 A.2d at 459 (em-

phasis in original), a basic principle of law could still be extracted therefrom:

> [P]ublic interest objections must be stated with particularity and must be individually addressed by the reviewing court and may form the basis of a denial even though the [PURD] application fully complies with all requirements of the Ordinance, *but only* if the objections are of a very specific and exceptional nature and have legitimate basis in law and fact.

50 Pa. Commonwealth Ct. at 286, 413 A.2d at 746. (Emphasis in original.) We must determine, therefore, whether or not any of the public interest objections advanced by the Borough Council were exceptional and specific in nature and whether or not they formed a sufficient basis for denial of the developer's PURD application. *Michaels.*

The first reason advanced by the Borough Council for denial of tentative approval of the developer's plan was that it was inconsistent with the Borough's comprehensive plan. A comprehensive plan is, by nature, abstract and recommendatory and does not forever control a zoning ordinance enacted to give it legal effect, *Michaels,* and may, therefore, be subsequently amended by passage of appropriate new zoning ordinances. *Doran.* Consequently, "inconsistency between the application and the comprehensive plan, standing alone, is not a sufficient basis for the denial of tentative approval." *Michaels,* 50 Pa. Commonwealth Ct. at 286, 413 A.2d at 746. We need not pursue such considerations here, however, because the Borough cannot prevail in this objection in the presence of testimony by the Borough Planner that the Borough actually had *no* comprehensive plan at the time here involved.

The Borough Council also found that approval should be denied because the 5.2 units per acre density

of the PURD would be greater than the 2.9 dwellings per acre density permitted under the R-2 (single family detached) zoning presently permitted on the land. A planned unit residential development exists, however, as a modification of an existing zoning ordinance, *Doran*, and a PURD application must consequently be *judged* by the standards of the PURD ordinance rather than by the requirements of the Borough's zoning ordinance.[5] *Michaels*. And the 5.2 units per acre projected in the application falls well within the Borough's PURD ordinance density allowance of 8 units per acre.

The Borough Council next grounds its refusal of approval upon the proposition that the PURD, composed of single-family attached, duplex and single-family detached dwellings of a differing architectural style would not comport with a neighborhood presently composed of higher priced single-family detached homes, and that the resulting "disharmony, dissatisfaction and inevitable property devaluation ... would not contribute to the public interest." This finding is a general statement and as such fails to meet the requirement that the Borough's decision shall set forth with particularity the respects in which the plan would or would not be in the public interest as mandated by Section 709(b) of the MPC, 53 P.S. §10709(b). Nor would the record support such a finding here, for it reveals nothing more substantial than the concern and apprehension of neighbors that the values of surrounding properties might be adversely affected. *Soble*. Further, as we noted in *Doran*, 10 Pa. Commonwealth Ct. at 156, 309 A.2d at 457, "if a

---

[5] Although the standards of a municipality's PURD ordinance control *evaluation* of a PURD application, existing zoning regulations continue to apply to the land included within the proposal until the development plan has received final approval and is filed of record. Section 711(d) of the MPC, 53 P.S. §10711(d); *Doran*.

township were allowed to disapprove a planned residential development merely because it would 'destroy the integrity of the R-2 zoning in the area,' it is doubtful that such a development could be placed anywhere."

The Borough Council further found that the physical design of the plan did not provide adequate traffic control and fell short of the Borough's PURD ordinance requirement that the plan be related to local and regional highway systems, that additional traffic hazards not be created and that road systems be adequate in terms of traffic volume, capacity and construction type to accommodate the projected increase in traffic. It stated that any increase of traffic on Kings School Road, the only road affording ingress to and egress from the proposed development, would serve to aggravate safety problems which already existed on that road due to the road's narrow width, poor alignment and unpaved sections. It also found that sight distance visibility at the points of ingress and egress would be poor. However, as recognized by the Borough Council in its decision, a mere increase in traffic is not sufficient grounds for restricting or preventing the use of property by its owner. It has been recognized by the courts that a "traffic increase with its attendant noise, dirt and hazards is an inevitable accompaniment of suburban progress and of our constantly expanding population which, standing alone, does not constitute sufficient reason to refuse a property owner the legitimate use of his land." *Doran,* 10 Pa. Commonwealth Ct. at 158, 309 A.2d at 458. Furthermore, the record reveals that the developer and the Borough's engineer both agreed that the difference in traffic generated by the PURD as opposed to single family detached development for which the area is presently zoned would not be significant.

The Borough Council objected finally to the alleged insufficiency of the developer's plans for abatement or containment of the presently existing serious storm water drainage problem at the site, arguing that this situation would be severely exacerbated by the proposed development. The developer proposed to deal with the problem by means of a twenty-five year interval storm drainage basin or pond coupled with a rerouting of the stream which runs through the area. The dimension of the basin represented an increase in size from that set forth in the original plan. The architect, basing his opinion upon the studies and earlier testimony of Dr. John Verna, a hydraulic engineer, testified to the adequacy of the proposal. Several weeks prior to the hearing, the proposal and studies done by Dr. Verna had been made available to the Borough's planner and engineer but neither was called to testify or responded at the hearing. There is, therefore, nothing in the record to support the Borough Council's finding of the inadequacy of the storm drainage plan. However, as noted by the Borough Council, the area downstream from the site is subject to flooding and an increase or ill-chosen alteration in flow of the stream would seriously affect downstream properties. Although the Borough cannot burden the developer with responsibility for *alleviation* of an existing problem, *Michaels*, it can require the developer to adopt appropriate storm control measures to protect the community against further *aggravation* of the problem as a result of construction of the PURD. At this stage of the proceedings, however, the developer is required only to disclose the feasibility of proposals for the disposition of storm water, Section 707(4)(v) of the MPC, 53 P.S. §10707(4)(v); specifications as to the precise projected relocation of the stream are to be included in his application for final approval. Section 711(a) of the MPC, 53 P.S. §10711(a).

The Borough also argues here that, while the public interest objections voiced by the Borough Council are not, when considered individually, likely to be sufficient to sustain a denial of approval of the plan, the cumulative indicia of the plan's adverse impact on the public interest is more than sufficient to support denial. In so arguing, the Borough would have us conclude that the whole is greater than the sum of its parts. This we cannot do. In the absence of public interest objections of a substantial, specific and exceptional nature, we must find that the Borough Council abused its discretion in denying tentative approval to the developer's PURD application. *Michaels.*

For the foregoing reasons, we will affirm the order of the court below.

ORDER

AND, NOW, this 18th day of February, 1982, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

Judge PALLADINO did not participate in the decision in this case.