The Board of Supervisors of College Township, Appellant, *v.* Centre Hills County Club and Centre Hills Realty, Inc., Appellees.

Argued February 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*Reed McCormick,* with him *Dunaway, Weyandt & McCormick,* for appellants.

*Robert K. Kistler,* with him *Miller, Kistler, Campbell, Mitinger & Beik,* for appellees.

OPINION BY JUDGE ROGERS, March 19, 1975:

College Township, Centre County, here appeals from the order of a judge of the 46th Judicial District specially presiding in the Court of Common Pleas of Centre County (the 49th Judicial District) effectively setting aside a decision of the township supervisors approving a planned residential development of 450 dwelling units to be located on a tract of about 88 acres and directing approval of a development thereon of 743 dwelling units.

The appellee is Centre Hills Country Club (Country Club), a private golf and country club organized as a nonprofit corporation with a present membership of about 340 families, who enjoy, in addition presumably to other privileges of membership, the use of an existing 18 hole golf course. The Country Club desires to have a 27 hole golf course. To this end, it obtained options to purchase 157.56 acres of land adjoining its existing facilities. Forty eight of its members formed a business

corporation, Centre Hills Realty, Inc. (Realty Company). The Country Club employed a firm of landscape architects to prepare a tentative plan for the development of the 157.56 acres by the construction of the desired nine hole addition to the Country Club's golf course on 69 acres, and the construction on the remaining 88 acres of a total of 743 dwelling units to be contained in apartment houses, townhouses and single family dwellings. The entire development would be accomplished by the Realty Company which would eventually own or control the 88 acre residential development. The addition of nine holes of golf course would be owned and controlled by the Country Club for the use of its members. The occupants or eventual owners of the proposed apartments, townhouses and single family dwellings to be constructed on the 88 acre parcel would have no right as such in or to the use of the golf course addition unless, of course, they should apply for and be admitted to membership in the Country Club.

The tentative plan was filed for approval of the township supervisors pursuant to the township's Planned Residential District Ordinance adopted under the authority of Article VII of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10701 through 10711. The Board of Supervisors, after hearing, granted tentative approval of the plan with conditions, one of which provides the issue in this case—that the total density or number of dwelling units to be constructed should not exceed 450. The Country Club declined to accept the condition that the number of units be reduced from the proposed 743 to 450 and appealed the supervisors' decision to the Court of Common Pleas which, as noted, directed approval of the planned residential development with the number of units proposed by the Country Club.

The tract proposed for development is located in an R-1 Residential District of the township zoning ordinance

and zoning map.[1] The Planned Residential District Ordinance provides for a density of five residential units per acre for planned residential developments proposed to be created in the R-1 Residential zoning district. The Country Club contends that because it proposes the development of 157.56 acres, it is entitled to construct 743 units; the township contends that since the golf course addition will belong to the Country Club and the residents of the apartments, townhouses and homes to be constructed will have no right as such to use this portion of the development, only the 88 acres on which the dwelling units would be located should be used in the computation of allowed density and that therefore the total permitted number of units is and should be 450. The township is clearly correct and we therefore reverse the order of the court below.

Section 107(14) of the MPC, 53 P.S. §10107(14) defines the Planned Residential Development as "an area of land, controlled by a landowner, to be developed as a *single entity* for a number of dwelling units, the development plan for which does not correspond in lot size, bulk or type of dwelling, density, lot coverage and required open space to the regulations established in any one residential district created, from time to time, under the provisions of a municipal zoning ordinance." (Emphasis supplied.) The single entity, as the plan filed shows and as the Country Club's insistence on its entitlement to construct 743 dwelling units further demonstrates, is the entire 157.56 acres. The 69 acres to be devoted to the uses of the Country Club's golf course addition, being a part of the entity, is subject to the controls established by the MPC and the ordinance. Since no dwelling units are proposed to be constructed on the 69 acre golf course addition, that area is what the MPC names "common open

---

1. The record reveals that about 125 homes could be constructed on the 157.56 acres under the regulations for the R-1 Residential District.

space" and defines in Section 107(4), 53 P.S. §10107, as "a parcel or parcels of land or an area of water, or a combination of land and water within a development site and *designed and intended for the use of enjoyment of residents of the planned residential development. . . ."* (Emphasis supplied.) The Township's Planned Residential District Ordinance provides that all land shown on the plan as common open space shall be conveyed either to the township or to an organization for the ownership and maintenance of common open space, obviously referring in the second alternative to the provisions for organizations of residents of Section 705(d) of the MPC, 53 P.S. §10705. The Golf course addition here proposed is intended not for the use and enjoyment of residents of the development but for the members of the Country Club and the Country Club is not the kind of organization referred to in the ordinance and the MPC. As a lay witness at the supervisors' hearing cogently remarked:

> "Let's say you have 100 acres of land — farm land. You want to develop a Planned Residential Development, ok, that means that 5 units per acre in R-1 you could put 500 dwelling units on that land. You could compress it into a very small space and designate the agricultural land as agricultural land because it is open space. . . . You could continue to farm the open space and no farmer, believe me, is going to tolerate people running around walking their dogs through crops. . . . I'm saying that the term golf course or not golf course is almost irrelevant. It's open space and who can use it and is it available to the residents. And I think in the case of farm land or golf course, it has a very restricted use to the people [of] the additional dwelling units that are being generated by that land. I think both of them are really contrary to the intent of the Ordinance."

The Country Club makes two arguments meriting brief mention. It correctly notes that it has provided on

the 88 acre tract all of the common open space required by the township ordinance for an 88 acre planned residential development. The difficulty is that it proposes that the occupants of 743 dwelling units should use the spaces as contrasted with the ordinance's allowance, at five units per acre, of only 450 units. The Country Club also correctly observes that the ordinance permits golf courses in planned residential developments. The section cited however, 2-B(4), provides that "the Board of Supervisors may also permit such additional uses as churches, public schools, golf courses and community clubs, *provided they are designed to serve primarily the residents of the Planned Residential Development. . . .*" (Emphasis supplied.)

We cannot devise a better statement of our view of the Country Club's proposal than a sentence spoken by another lay witness at the supervisor's hearing: "It does not seem logical to us, or legal either, that you carve out approximately one-half of this area and say that the residents cannot use it and expect [that] the same number of dwelling units [should] be put on the remaining land."

Order reversed.

Judge CRUMLISH, JR. concurs in result only.