Appeal of Elias J. Hakim, Jr., t/d/b/a Manor Investment Company *v.* From the Decision of the Board of Commissioners of the Township of O'Hara. Board of Commissioners of the Township of O'Hara, Appellant.

Argued October 27, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Frank J. Gaffney,* with him *Thorp, Reed & Armstrong,* for appellant.

*David W. Craig,* with him *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellee.

OPINION BY JUDGE ROGERS, December 8, 1976:

Elias J. Hakim, the instant appellee, has been trying since November 1973 to obtain the approval of the competent authorities of O'Hara Township, Allegheny County, of his proposal to construct apartment houses in a zoning district where such development is permitted as a planned residential development upon compliance with the provisions of an ordinance adopted pursuant to Article VII of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10701 et seq. A history of the appellee's efforts until October 15, 1974, appears in *Board of Commissioners of the Township of O'Hara v. Hakim, d.b.a. Manor Investment Co.,* 19 Pa. Commonwealth Ct. 661, 339 A.2d 905 (1975). There we disagreed with a Court of Common Pleas order requiring tentative approval of appellee's plan for a single building project because we concluded that the building offended a dimensional requirement of the township's planned residential development ordinance. We, nevertheless, directed that the appellee's plan be granted tentative approval, subject to his compliance with the dimensional requirement for any building and

subject to such other reasonable and economically feasible conditions as the township should require.

In compliance with our order, the appellee amended his plan to propose two buildings each complying with the dimensional requirements and the township, also in compliance with our order, tentatively approved the plan, subject to conditions, none of which were objected to by the appellee. One of those conditions was as follows:

18. That final plans will be presented showing locations and easements required for water lines and sanitary sewer lines as approved by the proper authorities, and if the sanitary sewers are not adequate, then the owner-developer will install adequate sanitary sewers.

The appellee says that he did not object to this condition because at the hearing in the court below which resulted in that court's order directing tentative approval, the evidence, including that of the township, was to the effect that the public sanitary sewer line on the tract was adequate to serve the appellee's apartment project despite infiltration of surface water at locations above the appellee's property which the township was taking steps to cure, and because the trial judge found that ''[t]he sanitary sewer system presently available to the property is more than sufficient to accommodate the proposed development.''

On March 9, 1976, the township supervisors gave final approval to plans for Phase I of appellee's development, consisting of one of the proposed buildings to contain 95 apartments, subject to the appellee's compliance with six so-called conditions, five of which merely require compliance with existing township building and development regulations. The sixth condition to final approval, which is the occasion of this case, was:

6. Paragraph 18 above-referred to (a condition of tentative approval) is amended to read as follows: 'That final plans will be presented showing locations and easements required for water lines and sanitary sewer lines as approved by the proper authorities; and if the sanitary sewers are not adequately designed, including all legally allowable maximum infiltration, and a factor for age, and normal safety factors, then the owner-developer will install adequate sanitary sewers, as necessary.'

It is noted that whereas condition 18 to the tentative approval provides that ''if the sanitary sewers are not adequate then the owner-developer will install adequate sanitary sewers,'' so-called condition 6 to the final approval adds to and changes condition 6 by the language emphasized in the following quotation: ''If the sanitary sewers are not *adequately designed, including all legally allowable maximum infiltration, and a factor for age, and normal safety factors,* then the owner-developer will install adequate sanitary sewers, *as necessary.*'' It is, of course, immediately apparent that the language added by so-called condition 6 to final approval is so imprecise it could be considered not to add anything to condition 18. Upon prudent inquiry as to its purpose, however, the appellee discovered the following, (1) that the amendment was the township's way of expressing its position that the sanitary sewer line, despite the earlier hearing and finding, was inadequate, (2) that the township had in its possession an opinion of its engineer that the sanitary sewer line was inadequate, and (3) that the project could not be built unless the alleged inadequacy should be cured. We here note that the eight inch sewer line which serves the appellee's property is a small part of a line 5 to 7 miles in length. It is not clear whether the township's new position was

that, in order to construct the 95 dwelling units proposed by Phase I, the appellee would be required to reconstruct the line in its entirety or only in some unspecified fashion alter the line within the confines of his own land. Believing that either such requirement was an unreasonable condition, unreasonably imposed, the appellee filed with the Court of Common Pleas a petition for implementation of the order accompanying this, the Commonwealth Court's earlier opinion, providing that any condition to tentative approval should be reasonable and economically feasible. The lower court conducted a hearing at which, for the second time, the matter of the adequacy of the sewer line serving the property was explored.

The appellee's engineering witness testified upon a proper foundation that the line was adequate. The township's evidence consisted of the testimony of a registered surveyor employed by the engineering firm which had been in the employ of the township at the time of the first hearing who, by the expedient of calling the 5 to 7 mile long sewage line a lateral, rather than a main, produced calculations which, he said, proved the line to be inadequate to serve the additional 95 dwelling units.[1]

After consideration of the testimony the trial judge concluded that the amended condition was unreason-

---

[1] The record discloses three things concerning this evidence. First, as we have already noted, at the earlier trial of this issue the township manager testified and agreed that they had adequate sewage capacity and that any problem with the line was the result of illegal infiltration; second, that the township's expert witness at the second hearing made calculations at the time of the earlier hearing on this issue and formed the opinion that the line was adequate to serve all of the proposed new dwelling units; and third, that this witness admitted on cross-examination that he had indeed made such calculations and formed such opinion which he communicated to the township solicitor prior to the first hearing, at which he did not testify because not asked.

able and struck paragraph 18 except for that portion reading "that final plans will be presented showing locations and easements required for water lines and sanitary sewer lines as approved by the proper authorities. . . ."

It is our opinion, and we hold, that municipalities have no power when reviewing plans submitted for final approval either to impose new conditions or to amend conditions of tentative approval so as to cast additional burdens on the developer. In this connection it seems helpful to reproduce portions of Section 709 (which relates to tentative approvals), and Section 711 (which treats applications for final approval) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10709 and 10711.

Section 10709 reads pertinently as follows:

(a) The governing body within thirty days following the conclusion of the public hearing provided for in this article, shall, by official written communication, to the landowner, either:

(1) Grant tentative approval of the development plan as submitted;

(2) Grant tentative approval subject to specified conditions not included in the development plan as submitted; or

(3) Deny tentative approval to the development plan.

Failure to so act within said period shall be deemed to be a grant of tentative approval of the development plan as submitted. In the event, however, that tentative approval is granted subject to conditions, the landowner may, within thirty days after receiving a copy of the official written communication of the governing body notify such governing body of his refusal to accept all said conditions, in which case, the governing body shall be

deemed to have denied tentative approval of the development plan. In the event the landowner does not, within said period, notify the governing body of his refusal to accept all said conditions, tentative approval of the development plan, with all said conditions, shall stand as granted.

(b) The grant or denial of tentative approval by official written communication shall include not only conclusions but also findings of fact related to the specific proposal and shall set forth the reasons for the grant, with or without conditions, or for the denial, and said communication shall set forth with particularity in what respects the development plan would or would not be in the public interest including but not limited to findings of fact and conclusions on the following:

. . . .

(4) The physical design of the development plan and the manner in which said design does or does not make adequate provision for public services, provide adequate control over vehicular traffic, and further the amenities of light and air, recreation and visual enjoyment.

Section 10711 provides pertinently as follows:

(a) An application for final approval may be for all the land included in a development plan or, to the extent set forth in the tentative approval, for a section thereof. Said application shall be made to the official of the municipality designated by the ordinance and within the time or times specified by the official written communication granting tentative approval. The application shall include any drawings, specifications, covenants, easements, performance bond and such other requirements as may be specified by ordinance, as well as any conditions set forth in the official written communication at the time of tentative approval. A public

hearing on an application for final approval of the development plan, or part thereof, shall not be required provided the development plan, or the part thereof, submitted for final approval, is in compliance with the development plan theretofore given tentative approval and with any specified conditions attached thereto.

(b) In the event the application for final approval has been filed, together with all drawings, specifications and other documents in support thereof, and as required by the ordinance and the official written communication of tentative approval, the municipality shall, within thirty days of such filing, grant such development plan final approval.

(c) In the event the development plan as submitted contains variations from the development plan given tentative approval, the governing body may refuse to grant final approval and shall, within thirty days from the filing of the application for final approval, so advise the landowner in writing of said refusal, setting forth in said notice the reasons why one or more of said variations are not in the public interest. In the event of such refusal, the landowner may either:

(1) Refile his application for final approval without the variations objected, or

(2) File a written request with the governing body that it hold a public hearing on his application for final approval. If the landowner wishes to take either such alternate action he may do so at any time within which he shall be entitled to apply for final approval, or within thirty additional days if the time for applying for final approval shall have already passed at the time when the landowner was advised that the development plan was not in substantial compliance. In the

event the landowner shall fail to take either of these alternate actions within said time, he shall be deemed to have abandoned the development plan. Any such public hearing shall be held pursuant to public notice within thirty days after request for the hearing is made by the landowner, and the hearing shall be conducted in the manner prescribed in this article for public hearings on applications for tentative approval. Within thirty days after the conclusion of the hearing, the governing body shall by official written communication either grant final approval to the development plan or deny final approval. The grant or denial of final approval of the development plan shall, in cases arising under this section, be in the form and contain the findings required for an application for tentative approval set forth in this article.

. . . .

We paraphrase the statutory scheme: (1) the municipality, after consideration of the plan offered for tentative approval, may grant tentative approval outright, may grant tentative approval subject to specified conditions, or may deny tentative approval; (2) the grant or denial of tentative approval shall include conclusions and findings of fact setting forth reasons for the grant or denial of the application and in particular state in what respects the physical design does not make adequate provision for public services;[2] (3) the application for final approval must include all drawings and other materials required by the gov-

---

[2] Neither the grant of tentative approval with condition nor the grant of final approval by O'Hara Township contain findings of fact, much less findings with reference to the adequacy of the sanitary sewers. The only mention of sanitary sewers in the tentative approval, made after a trial of the issue of their adequacy, was a condition that they be adequate, and similarly the only mention of sanitary sewers in the final approval was that in condition 6.

erning body's ordinance as well as any conditions set forth in the official written communication at the time of tentative approval; (4) upon such submission it is the duty of the municipality to grant final approval if the plan conforms to the ordinance and any conditions to tentative approval; and (5) if the development plan submitted for final approval contains variations from the plan given tentative approval the governing body may refuse final approval, stating its reasons therefor.

*There is nothing in Section 711, 53 P.S. §10711, or elsewhere in the MPC, which empowers a municipality, without the agreement of the developer, to impose conditions to final approval additional to, different from or amendatory of conditions imposed upon tentative approval.*[3] This principle applies in all cases; but it is emphatically to be enforced in this case, where the condition to tentative approval that sanitary sewers be adequate was imposed after a judicial hearing in which all of the evidence and the court's findings were to the effect that the condition was already satisfied by facilities present on the site.

This is not to say that had there been no judicial determination that the sewers were adequate or had the township concluded that by reason of a change of circumstances, the sewers once adequate were, when final approval was requested, in fact not adequate, the township would be without remedy. It could refuse to grant final approval on the ground that the condition to tentative approval that the sewers be adequate was not then complied with. From this action, the developer could appeal to court as authorized by Sec-

---

[3] This conclusion is enforced by Section 710, 53 P.S. §10710, which, *inter alia*, provides that a tentatively approved plan may not be "modified or revoked or otherwise impaired by action of the municipality pending an application or applications for final approval. . . ."

tion 1006 of the MPC, 53 P.S. §11006 and, in such case, the issue on the appeal would be the same as that tried in this case—that is, the adequacy of the sewers; and the outcome would be a court order, based on the evidence, either that the township had properly refused final approval or that the township had acted improperly and should be directed to grant final approval.

We have read the evidence of the hearing conducted on the Petition for Enforcement and wholly agree with the hearing judge that a preponderance of that evidence showed that the sewers on the property remained adequate to dispose of the sewage from this project. Having so found, the court properly struck from the condition all of the phrase containing the vague new material, interpreted by the township as requiring the developer to build a new sewage system. The effect of the court's order is exactly the same as would obtain if the township had refused final approval, the developer had appealed and the court had concluded on the evidence that the refusal was improper and directed that final approval be granted.

In addition to saying that the lower court was wrong in finding that the sewer line was adequate, the appellant advances several reasons for its belief that the court below was without jurisdiction. One such reason seems to be based on an alleged inconsistency between what the hearing judge said at the conclusion of the hearing concerning an order and the order prepared by the appellee's counsel, which the judge signed. We believe that the lower court's written order is entirely consistent with his finding announced from the bench that the portion of condition 6 to final approval amending condition 18 to tentative approval was wholly unreasonable. Unreasonable conditions are properly stricken.

The appellant also argues that the court had no jurisdiction because the appellee did not object to or appeal from condition 18 to tentative approval. This contention seems to be based on a misreading of our order of June 16, 1976,[4] reversing the order of the court below and remanding the record with direction that the plan be granted tentative approval subject to the appellee's complying with the ordinance and subject to other reasonable conditions. The township seems to say that our use of the word reversed concluded the case and ended the lower court's jurisdiction. While our order might as well have been to modify the order of the court below, affirmed it as so modified, and remanded, it is clear that as written we agreed with the lower court that the municipality's action had unlawfully prevented or restricted the appellee's development with the result that the lower court "shall retain jurisdiction of the appeal during the pendency of any such further proceedings and may, upon motion of the landowner, issue such supplementary orders as it deems necessary to protect the rights of the landowner as declared in its opinion and order." Section 1011(2) of the MPC, 53 P.S. §11011 (2).

Having concluded that the questions raised in the appeal are unmeritorious, we enter the following

ORDER

AND Now, this 8th day of December, 1976, the order of the court below is hereby affirmed.

---

[4] Appearing at 19 Pa. Commonwealth Ct. at 668, 339 A.2d at 909.

---

CONCURRING AND DISSENTING OPINION BY JUDGE MENCER:

I concur in the majority's conclusion that a municipality, without the agreement of the developer, is without power to impose conditions to final approv-

al additional to, different from, or amendatory of, conditions imposed upon tentative approval of a development plan.

However, I cannot join in affirming the order of the court below which not only properly deleted the sixth condition to final approval but also, in my judgment, improperly struck down a portion of paragraph 18 of the conditions to which the development plan was subjected by the tentative approval granted.

I would affirm that portion of the order of the court below which struck down the sixth condition to final approval and would reverse that portion of the order which altered paragraph 18 of the conditions imposed on the plan at the time of the granting of the tentative approval.