544 A.2d 1081

Highfield II, Inc., Appellant *v*. The Municipality of Upper St. Clair, Appellee.

Argued May 24, 1988, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Lynn E. MacBeth*, with counsel, *Walter A. Koegler, Koegler and Tomlinson*, for appellant.

*Joan P. Feldman*, with counsel, *Robert N. Hackett, Robert N. Hackett & Associates*, for appellee.

OPINION BY JUDGE CRAIG, July 20, 1988:

Highfield II, Inc. appeals an order of the Court of Common Pleas of Allegheny County which granted a motion to discontinue Highfield's appeal filed by the Township of Upper St. Clair (USC). The trial court held that it did not have jurisdiction to review Highfield's appeal of a condition which the USC Board of Commissioners had attached to its grant of final approval of Highfield's proposed office and retail development. We now reverse the trial court.

In 1983, Highfield applied for approval of Phase I of a five-phase office and retail development project. The

USC zoning ordinance, at section 130-23, adopts the two-tiered procedure for application and approval of planned residential developments, as set forth in the Pennsylvania Municipalities Planning Code (MPC), sections 701 to 712,[1] for planned shopping and office centers. Under this approach, the board may grant tentative approval subject to specific conditions; the developer then has thirty days after written notice of tentative approval to notify the board of its refusal to accept the conditions. MPC section 709.

On November 5, 1984, the board granted tentative approval to Phase I of Highfield's application, subject to three modifications and twenty-six conditions. Condition 7 provided:

> That subsequent final approvals shall be subject to the compliance with the driveway designs and *any improvements to Hidden Valley Drive or Boyce Road as recommended by the Township's Consulting Traffic Engineer and determined by the Township in its sole discretion* and approved by the Pennsylvania Department of Transportation, in order to mitigate the traffic impacts created by the Boyce Station Mall Complex on the local street. *All costs of such improvements shall be paid for by the Applicant.* (Emphasis added.)

Highfield did not notify the board of any objection to the conditions within the thirty-day time limit.

Following the completion of traffic impact studies, USC notified Highfield that it would have to post a performance bond of $190,670 before the board would grant final approval. At its December 2, 1985 meeting, the board adopted Ordinance No. 1173, which granted final approval to Highfield subject to the posting of the performance bond.

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10701-10712.

Highfield appealed the condition of final approval to the court of common pleas. USC there argued that Highfield's appeal was premature, because Highfield had failed to exhaust its administrative remedies. The board relies upon MPC section 711(c), as reiterated in its zoning ordinance, contending that it requires an applicant challenging conditions imposed upon a grant of final approval to seek a hearing before the board before appealing the board's decision to a trial court.

On July 22, 1986, the trial judge remanded the case to the USC board for a hearing on Highfield's objection to the condition of final approval requiring the posting of the security bond, ordering that the hearing be held within thirty days, and that Highfield be given a complete opportunity to present evidence and legal arguments. The order did not specifically retain or relinquish jurisdiction of the case.

On August 18, 1986, the board held a public hearing on Highfield's objections. On October 6, 1986, the board rendered its decision that Highfield must establish an escrow in the amount of $190,605 or final approval would be denied.

Highfield did not file a new appeal with respect to the board's October 6 decision. Instead, Highfield proceeded with the case at the same number and term at which the trial judge had remanded it. On November 12, 1986, the trial judge entered an order directing that the case be listed for hearing. On January 21, 1987, USC filed a motion to dismiss the appeal.

Another judge granted the board's motion, holding that the court of common pleas did not have jurisdiction to consider the matter:

This court never had jurisdiction to entertain the case, therefore, a court cannot retain that which it never had. The Order of our esteemed colleague, Honorable I. MARTIN WEKSELMAN, dated July 22, 1986, remanded the matter to the

Board because the appeal by Highfield had been premature; thus, this Court had no jurisdiction to hear the case at that time. Regardless of whether the order retained or relinquished jurisdiction, the matter was never properly brought to the Court of Common Pleas. Here, Highfield has failed to appeal the decision of the Board within thirty (30) days, per the Pennsylvania Municipality [sic] Planning Code, 1968, July 31, P.L. 805 Art. I, §101; 53 Pa.C.S.A. §11006. Instead, appellant has attempted to revive the original appeal from the decision of the U.S.C. Board on a matter in which Judge WEKSELMAN already ruled. The record is clear that on November 12, 1986, six days after the time for appealing the second Board decision had elapsed, the appellant successfully induced Judge WEKSELMAN to sign an Order listing the original case, on which WEKSELMAN, J. had already acted, for trial.

The question before us on appeal is whether the court of common pleas initially had jurisdiction to review Highfield's appeal of the condition attached to the board's grant of final approval of the development plan, and whether Highfield could properly proceed with its appeal under the same term and number following the board's decision on remand.

The board argues that the second trial judge correctly held that the court of common pleas never had jurisdiction of the case, because Highfield had not exhausted its administrative remedies. The board contends that MPC section 711(c) required Highfield to seek review of conditions of final approval with the board before appealing the issue to the trial court. That section provides, in pertinent part:

(c) In the event the development plan as submitted contains variations from the develop-

ment plan given tentative approval, the governing body may refuse to grant final approval and shall, within forty-five days from the filing of the application for final approval, so advise the landowner in writing of said refusal, setting forth in said notice the reasons why one or more of said variations are not in the public interest. In the event of such refusal, the landowner may either:

(1) Refile his application for final approval without the variations objected, or

(2) File a written request with the governing body that it hold a public hearing on his application for final approval. If the landowner wishes to take either such alternate action he may do so at any time within which he shall be entitled to apply for final approval, or within thirty additional days if the time for applying for final approval shall have already passed at the time when the landowner was advised that the development plan was not in substantial compliance. In the event the landowner shall fail to take either of these alternate actions within said time, he shall be deemed to have abandoned the development plan. (As amended 1981 P.L. 293, No. 101.)

The board's argument that Highfield failed to exhaust its administrative remedies by not refiling its application or not requesting a hearing would have been correct if the board had *refused* to grant final approval of Phase I. However, the board did not deny final approval; it *granted* final approval, subject only to the condition of posting the performance bond. The procedural alternatives described in MPC section 711(c) are mandated *only* in the course of a refusal of final approval.

Ryan, Pennsylvania Zoning Law and Practice, §12.2.13, anticipated this precise situation:

In some instances, the governing body has granted final approval, adding new conditions which are unacceptable to the developer. In that case, the landowner has the right to treat the approval as the equivalent of a denial, and request a hearing under Code §711(c)(2). However, there is no indication in the Code that, having characterized its action as an 'approval,' the municipality can insist that the landowner follow that route if he should elect to take the municipality at its word and appeal the conditions instead. *See* Hakim v. Board of Commissioners of the Twp. of O'Hara, 27 Pa. Commonwealth Ct. 405, 366 A.2d 1306 (1976), where the developer raised the point by filing a petition to implement a prior court decision.

Although USC attempts to characterize the board's decision as a "final decision of the board denying Final Approval by reason of [Highfield's] refusal to put up its performance security," the board's decision is clearly labeled "Granting Final Approval to Boyce Station Mall, Phase I." The power to grant or deny final approval rested with the board, not Highfield. The board could have denied final approval, forcing Highfield to refile its application, or request a public hearing or abandon its project; instead, the board granted approval subject to conditions. Highfield elected "to take the municipality at its word," accepted the approval and challenged only a condition of that approval in court.

We conclude that the MPC, as reiterated in the USC zoning ordinance, contains no requirement that a developer request a board hearing when it wishes to challenge a condition to a grant of final approval, and that Highfield could properly seek relief from that condition from the court of common pleas. The trial court had lawful jurisdiction over Highfield's initial appeal

from the board's decision. Highfield properly proceeded with its appeal, under the same term and number, following the board's decision on remand, because it had never received the judicial review of the substantive claims to which it was entitled. Because there had been no judicial determination on Highfield's original appeal, there was no need for Highfield to refile its appeal following the board's decision on remand.

The board also argues that Highfield did not exercise its right under section 709(a) to challenge Condition No. 7, which required Highfield to pay for road improvements, following the board's grant of tentative approval. The board argues that the condition was therefore binding, and that Highfield was on notice that the amount of the performance bond would be determined at the board's discretion. The crux of Highfield's argument on appeal, however, is that the $190,670 performance bond was not included in the conditions of tentative approval, but represented a wholly new condition imposed at the time of final approval. That is a substantive issue which the trial court must resolve.

In summary, at all times following Highfield's initial appeal from the board decision, the court of common pleas had jurisdiction over the case. We therefore reverse the trial court's order dismissing Highfield's appeal, and order the parties to proceed on the substantive issues of the case.

## ORDER

NOW, July 20, 1988, the order of the Court of Common Pleas of Allegheny County, dated December 3, 1987, at No. SA 2232-1985, is reversed, and the case is remanded to the court of common pleas, to proceed with the appeal as filed.

Jurisdiction relinquished.