**ALTA VITA CONDOMINIUM ASSOCIATION, H. Nevin Wollam and Mary Wollam, his wife, Edward Halusic and Linda Halusic, his wife and Darrell E. Albert and Rosemary S. Albert, his wife**

v.

**ZONING HEARING BOARD OF THE TOWNSHIP OF HEMPFIELD, the Township of Hempfield and Hallmark Quality Construction, Inc.**

**Edward Halusic and Linda Halusic, his wife and Darrell E. Albert and Rosemary S. Albert, his wife, Appellants.**

**Alta Vita Condominium Association, H. Nevin Wollam and Mary Wollam, his wife, Edward Halusic and Linda Halusic, his wife and Darrell E. Albert and Rosemary S. Albert, his wife**

v.

**The Zoning Hearing Board of the Township of Hempfield and Hallmark Quality Construction, Inc., and the Township of Hempfield.**

**Alta Vita Condominium Association, H. Nevin Wollam and Mary Wollam, his wife, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 17, 1999.
Decided July 27, 1999.
Reargument Denied Sept. 28, 1999.

David L. Robinson, Greensburg, for appellants.

Daniel J. Hewitt, Greensburg, for appellee, Hallmark Quality Construction.

Lesile J. Mlakar, Greensburg, for appellee, Township of Hempfield.

Before McGINLEY, J., KELLEY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Alta Vita Condominium Association (Association), H. Nevin and Mary Wollam, Edward and Linda Halusic and Darrell E. and Rosemary S. Albert (collectively Objectors) appeal from an order of the Court of Common Pleas of Westmoreland County that dismissed Objectors' appeals[1] from the decision of the Hempfield Township Zoning Hearing Board (ZHB) denying Objectors' challenge to the grant of six building permits issued to Hallmark Quality Construction, Inc. (Hallmark) on October 21, 1997 for the construction of a six-unit multi-family dwelling located in a planned residential development (PRD). We affirm.

This case has a long involved history dating back to May 9, 1977, when the Hempfield Township's Board of Supervisors (Supervisors) tentatively approved the Lago de Vita (Lago) PRD, Phases 1 and 2. On October 7, 1977, the Lago PRD was recorded. It included Lot 37–A, which as shown on the PRD contained 8.01 acres. Lot 37–A included designations for multi-family units, i.e., a 58–unit high rise building, two twelve-unit multi-family buildings and one sixteen-unit multi-family building.

On November 12, 1979, the Supervisors approved the division of Lot 37–A into five separate lots designated 37–A–1 through 37–A–5. This division of Lot 37–A did not in any way alter the use of the 8.01 acres as set out in the original PRD; nor did it change the number of multi-family units that could be constructed. The division of Lot 37–A was recorded on November 14, 1979. Shortly thereafter, the 58–unit high rise was built, but no other buildings were constructed on any portion of Lot 37–A. No challenges were filed to either the original PRD or the division of Lot 37–A.

On September 23, 1997, Hallmark applied for building permits to construct a six-unit multi-family building on Lot 37–A–1.[2] On October 21, 1997, the Township Zoning Officer issued the building permits. Because each unit was to be sold individually, six separate building permits were

---

1. The Halusics and the Alberts filed a separate appeal from the appeal taken by the Association and the Wollams. The two separate appeals from the trial court's decision were consolidated by order of this Court, dated January 26, 1999.

2. Although Lago de Vita, Inc. was the initial developer of the PRD, Hallmark purchased Lot 37 A–1 on February 5, 1997.

needed. Objectors[3] filed an appeal with the ZHB requesting the revocation of the six permits. They raised a number of challenges, including: 1) that Lot 37–A–1 is non-contiguous and substandard as to lot area in violation the zoning ordinance, 2) that the six multi-family units were not shown on the original PRD, 3) that the six-unit building violates the Township's ordinance as to maximum residential density, 4) that the six-unit building does not comply with off-street parking requirements, and 5) that Lago, the original developer, has conveyed away all open space and that the public golf course has been partially constructed on what is common open space.

After hearings, the ZHB responded to each of Objectors' challenges, determining that: 1) the zoning ordinance is inapplicable to the PRD, 2) the PRD showed the 58–unit building, two twelve-unit buildings and one sixteen-unit building and the PRD noted all building locations are approximate to show general design only with exact location to be determined as per site conditions, 3) only one-half of the allowable number of units in the PRD had been constructed so that density had not been violated,[4] 4) provisions for off-street parking had been made without the use of common areas for parking, and 5) no legal authority required a developer to make open space available to residents at no charge.[5] Based on the above, the ZHB denied Objectors' appeal and ruled that the six building permits had been properly issued.

Objectors next appealed to the trial court, arguing that the "subdivision" of Lot 37–A is not part of the PRD and, therefore, is governed by the subdivision portions of the Pennsylvania Municipal Planning Code (MPC).[6] The court rejected this argument on the grounds that under Section 711(d) of the MPC, 53 P.S. § 10711(d), if a modification of the PRD is approved and recorded, the zoning and subdivision regulations otherwise applicable cease to apply. As for Objectors' density argument, the trial court noted the number of dwelling units contemplated in the PRD and concluded that the six-unit multi-family building does not violate the overall density requirement established in the PRD.

The trial court also rejected Objectors' argument that there is a lack of sufficient open space because a privately owned golf course is partially located within the 30% area set aside for open space and that tennis courts and a playground were proposed but never built. The trial court recognized that the PRD included an open space area that in part consisted of several holes of a privately owned golf course, a lake and a proposed privately owned swimming pool. However, the trial court held that nothing in the PRD, or otherwise, prohibits the payment of fees for the use of amenities in the open space area. Thus, the trial court dismissed Objectors' appeal.

■ Objectors now appeal to this Court,[7] raising the following issues for our review: (1) whether the ZHB erred in determining that Lot 37–A–1 is part of the PRD and not a lot within a subdivision, (2)

3. Objectors are the owners of units in the high-rise and an owner of an individual lot in the PRD, who purchased their properties after the recording of both the original PRD and the modification of the PRD.

4. The PRD provided for the construction of 307 townhouses and several single-family homes in addition to the 58–unit building.

5. The ZHB suggested that Objectors could have pursued this claim against Lago in a court of law.

6. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

7. Where the trial court takes no additional evidence in a zoning case, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Ruprecht v. Zoning Hearing Board of Hampton Township,* 680 A.2d 1214 (Pa. Cmwlth.1996) *petition for allowance of appeal denied,* 548 Pa. 684, 699 A.2d 737 (1997).

whether the ZHB erred in determining that the approved subdivision plan constituted a modification of the original PRD plan, (3) whether the proposed structures meet the PRD plat requirements for height, bulk and location, (4) whether the PRD plan approved by the Township contains a time limit for completion of the total development, (5) whether Objectors must file an appropriate action before the common pleas court to determine the issue of PRD compliance, (6) whether the PRD was abandoned or not complied with thus prohibiting future development, and (7) whether Hallmark is entitled to utilize the higher density allocation in the multi-family portion of the PRD that was granted to the original developer.

First, Objectors argue that Lot 37–A was subdivided and, as a result, is governed by the Township's zoning and subdivision ordinances rather than by the terms of the PRD. Objectors further contend that at all times the division of Lot 37–A was treated as a subdivision and was approved in that manner by the Township Supervisors. Objectors also argue in the alternative that if the actions in 1979 are deemed a modification of the PRD, the requisite notice and public hearings were not properly undertaken.

Hallmark responds that even if the developers had filed a subdivision plan, that step was merely a precautionary measure. Notably, Hallmark relies on Section 711 of the MPC, 53 P.S. § 10711, which in subsection (d) states that "[u]pon the filing of record of the development plan the zoning and subdivision regulations otherwise applicable to the land included in such plan shall cease to apply thereto." *See also Ruprecht.* Hallmark notes that unless the developer elects to abandon the PRD by filing written notice of its intention, the PRD remains intact and the subdivision ordinance does not apply. 53 P.S. § 10711(e).

Objectors acknowledge that they do not have a right to challenge the PRD approval that took place in 1977. Rather they are attempting to negate the nominal subdivision of the PRD that occurred in 1979. They attack the procedure used at that time, indicating that an improper procedure was employed to effectuate the division of Lot 37–A so that it could remain within the PRD.

■ This argument overlooks the language in Section 711 of the MPC, relied on by the trial court. That language dictates that at the time a PRD is recorded, the zoning and subdivision ordinances are no longer applicable. Therefore, based on Section 711 and a lack of evidence that the PRD has been abandoned, we conclude that the PRD remains intact. Moreover, we note that Objectors all purchased their properties after 1979 and, therefore, had notice that a PRD had been recorded. Accordingly, the issues raised by Objectors in their attempt to have the Township's zoning and subdivision ordinances applied must fail. This includes issues concerning both use and density of the property at issue.

Objectors next argue that the proposed structures for which the permits were issued do not meet the PRD plat requirements for height, bulk and location in that the PRD did not show any six-unit buildings. Objectors also contend that lot size has been modified in that Lot 37–A has been cut in half. Finding no Pennsylvania cases that discuss this issue, Objectors cite *Frankland v. City of Lake Oswego,* 267 Or. 452, 517 P.2d 1042 (1973), wherein the Oregon court held that the plaintiffs were entitled to damages because a PRD developer's changes to the design of buildings he was required to sketch in the PRD plan were a severe departure from the plan.

Hallmark responds that the overall density of the plan has not increased above the original density approved. Hallmark further contends that to receive PRD approval density requirements must be met, but lot size requirements do not apply. Hallmark also argues that the townhouse-type buildings are consistent with the PRD

plan and for this reason alone *Frankland* is factually distinguishable.

The ZHB found that the six-unit structure was sufficiently similar to those approved in the PRD plan. (ZHB's Finding of Fact (FOF) No. 21). The ZHB also found that Objectors purchased their properties with notice that the developer or any purchaser of property from the developer could construct townhouse units on the original Lot 37–A or on the revised lots. (ZHB's FOF No. 24). Additionally, the ZHB noted that the recorded PRD stated that "all building locations are approximate to establish general design intention only. The exact location of buildings will be determined as per site conditions prior to construction." (ZHB's FOF No. 25).

As noted by the trial court, the PRD contemplated the 58–unit high rise and 307 townhouse-type multi-family units. As of October 1, 1997, only 155 townhouse units out of the 307 originally allowed had either been built or construction had been planned. Since this total is approximately one-half of the total authorized by the PRD, the trial court held that the overall density requirement of the PRD had not been violated. We agree. Furthermore, because the PRD does not place restrictions as to precise placement of the townhouse structures, such new conditions cannot be imposed after a finalized plan has been recorded. *Cf. Hakim v. Board of Commissioners of Township of O'Hara*, 27 Pa.Cmwlth. 405, 366 A.2d 1306 (1976).

Although the issue in *Hakim* involved a municipality's right to impose new conditions or amend the conditions of tentative approval on the grant of final approval of a PRD, we find the basis for the court's decision instructive here. The *Hakim* court emphatically stated that "[t]here is nothing in Section 711 [of the MPC], 53 P.S. § 10711, or elsewhere in the MPC, which empowers a municipality, without the agreement of the developer, to impose conditions to final approval additional to, different from or amendatory of conditions imposed upon tentative approval." *Hakim*, 366 A.2d at 1311 (emphasis in original). Based on this prohibition in the pre-final-approval stage, we conclude that the municipality here can do no more than assure that what is built in the PRD is consistent with the plan. More than that is prohibited. The ZHB considered the evidence and did not abuse its discretion by concluding that the proposed six-unit structure met the PRD requirements as to the height, bulk or location set forth in the PRD.[8]

Objectors next argue that Lago, the initial developer, failed to meet the time limits set forth in the PRD. Specifically, Objector contend that according to the approved PRD plan, Phase 1 was to have been completed by March 31, 1978, that Phase 2's completion date was March 31, 1980, and that the failure to comply is unreasonable by any standard.

Hallmark responds that neither the MPC nor the Township's PRD ordinance establishes a time requirement for the completion of the structures. Rather Hallmark argues that the only improvements subject to time limitations are streets, walkways, curbs, gutters, streetlights, fire hydrants and the like and that these improvements have all been completed.

The ZHB's decision contains FOF No. 28, which states that "[t]he development of the planned residential development has continued over the past 18 years at a steady pace. The development plan approved by the Township did not set a time period for completion of the total development." (ZHB's decision, p. 9). Other than this finding, the ZHB's decision

---

8. We note that in the Township's brief, it recognizes that the language of the PRD may not have been artfully drawn and that possibly more specificity should have been required before the PRD's approval was granted. However, pursuant to Article VII of the MPC, which governs PRD approval, the Township is limited to applying the PRD in lieu of any subdivision or zoning ordinances.

does not discuss or even allude to a recognition that an issue concerning time limitations was raised before it. Likewise, the trial court's decision does not discuss this issue. It is apparent that Objectors attempt to raise this issue to show abandonment of the PRD by the developer. However, in light of the ZHB's finding, that we conclude is based on substantial evidence, this argument fails.

■ Moreover, we note that Objectors' point of error in their Notice of Appeal to the trial court relates only to a failure by the developer by March 31, 1980, to complete the *conditions* imposed by the Board of Supervisors when it granted approval of the PRD. Objectors failed to raise the issue of completion of the entire PRD by a date certain before the trial court and have, therefore, waived that issue on appeal here. Pa. R.A.P. 302.

Objectors next argue that the developer must show compliance with the PRD before the zoning officer can issue building permits and that Objectors are not required to file an action in common pleas court to enforce the lack of the developer's compliance. Objectors rely on Section 87–127 of the Hempfield Ordinance, which requires that the zoning officer review the progress and status of construction and report his findings to the Planning Commission and the Supervisors to assure compliance with the PRD. Objectors contend that the zoning officer has not conducted any of these inspections and, therefore, could not issue the building permits. Objectors believe that because the ZHB is empowered to review the actions of the zoning officer, the lack of compliance issue falls squarely within the jurisdiction of the ZHB. We disagree.

■ Section 712.2 of the MPC, 53 P.S. § 10712.2 [9], grants a municipality the right to bring a civil enforcement action for noncompliance by the developer of a PRD before a district justice. Additionally, Section 706(2) of the MPC, 53 P.S.

§ 10706(2), gives to residents of a PRD the right to enforce "at law or equity" the provisions expressly provided for in the plan. *See Haines v. Minnock Construction Co.*, 289 Pa.Super. 209, 433 A.2d 30 (1981) (court relied on Section 706 of the MPC as the basis for the grant of a permanent injunction prohibiting a developer of a townhouse development from building in an open area adjacent to a resident's property). Objectors' reliance on the provision in the Hempfield Ordinance is misplaced. That portion of the Ordinance cited does not give the ZHB enforcement power; only the municipality or a resident/resident association has the right to file enforcement actions in a court of law. Thus, Objectors' argument in this regard must fail. They cannot enforce noncompliance in a challenge to the validity of the building permits.

Objectors' next argument concerns the alleged failure by the developer to provide the open space as called for in the PRD. Objectors maintain that a fundamental attribute of a PRD is its balancing of high density housing with common open space and that the initial developer abandoned the plan when part of the open space was sold to another entity that used that property as part of a public golf course. As a result of this use as a golf course and with reliance on *Board of Supervisor of College Township v. Centre Hills Country Club*, 18 Pa.Cmwlth. 40, 333 A.2d 822 (1975), Objectors contend that the general public should not have as much access to the open space as do residents, especially, because residents and the general public are all charged fees to use the open space. Objectors also complain that a promised swimming pool and playground have not been built, but that a parking lot for the golf course has replaced that portion of the open space designated for these amenities.

In response, Hallmark references the PRD, which provides that part of the open space would include four holes of a *pri-*

**9.** Added by the Act of December 21, 1988,      P.L. 1329.

*vately* owned golf course. Hallmark contends that Objectors had constructive notice of this at the time they purchased their units and can not now complain that this amenity is somehow different than what was set forth in the PRD. Hallmark answers Objectors' allegations concerning the swimming pool and playground with the proviso that Objectors' recourse is to file an enforcement action against the original developer in common pleas court.

In addressing this issue, the ZHB noted that the PRD approved by the Supervisors provided that both the golf course and the swimming pool would be *privately* owned. The ZHB then noted that:

There is nothing in the plan approved by the Supervisors nor is there any requirement in the law that prohibits the payment of fees by the property owners to be able to use and enjoy a swimming pool, a lake, and golf course which is part of the open area required under the plan. Additionally, there is no authority under the Hempfield Township Zoning Ordinance nor is there any authority under the plan approval or the Pennsylvania Municipalities Planning Code which gives authority to the Zoning Hearing Board to make a determination that the developer must make these services available free of charge to property owners in order for the said golf course, lake and swimming pool area to remain as part of the open space requirement of the approved plan.

(ZHB's decision, p. 4). The ZHB also noted that Objectors purchased their properties after the recording of the PRD and the "subdivision." The ZHB concluded that Objectors have rights under their agreements of purchase and should seek redress in the common pleas court. The trial court cited the ZHB's decision on this issue and reiterated that Objectors had not provided any basis upon which the court

could hold that a "lack of compliance with the terms of a PRD [could] void[ ] building permits otherwise allowable under the plan." (Trial court's opinion, p. 5).

After reviewing the *College Township* opinion, we conclude that Objectors' reliance on it is misplaced. College Township had given tentative approval to a PRD, but reduced the number of residential units because it considered a golf course *not* a part of the common open space. The *College Township* court cited the definition of "common open space"[10] and concluded that a golf course owned by a country club, requiring membership in the club for its use, cannot be considered a part of the common open space held for the use by the residents of a PRD. At first blush this holding appears to support Objectors' argument; however, the issue in *College Township* arose in the context of a final approval of a PRD.

■ Here, Objectors raise this issue twenty years after the PRD went into effect. Again we reiterate that Objectors purchased with notice that the golf course would be privately owned. Moreover, if Objectors believe that a lack of compliance with the PRD exists, their relief can only be obtained through an enforcement action that they may bring in the common pleas court. The same holds true with regard to the pool and playground areas. They cannot raise these issues in the context of an appeal from the grant of building permits.

■ Lastly, Objectors argue that Hallmark has not shown that it is entitled to any rights to develop the PRD. They make this argument on the basis that prior to the 1988 amendments to the MPC, no provision existed that allowed the "transfer of density rights" from one tract of land to another. Our review of the record reveals that Objectors failed to raise this

**10.** "Common open space" is defined in Section 107 of the MPC, 53 P.S. § 10107, as "a parcel or parcels of land or an area of water, or a combination of land and water within a development site and designed and intended for the use or enjoyment of residents of a development, not including streets, off-street parking areas, and areas set aside for public facilities."

issue before the ZHB or the trial court and have, therefore, waived this issue here.[11] Pa. R.A.P. 302.

For the reasons stated above, we affirm the trial court's order that sustained the ZHB's decision, holding that the zoning officer's grant of six building permits to Hallmark was proper.

### ORDER

NOW, July 27, 1999, the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is affirmed.

11. If in fact Objectors have raised this issue, they have failed to indicate where in the volu-minous record this issue was raised and have, thus, not complied with Pa. R.A.P. 2117(c).