# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reeves Family Real Estate, L.P., Select : 
Sites, L.P. and Pohlig Builders, LLC : 
                            : 
                   v.                  : No. 378 C.D. 2020
                            : No. 380 C.D. 2020
Board of Supervisors of Schuylkill : No. 712 C.D. 2020
Township and Glenn Makela : No. 713 C.D. 2020
                            : Argued: June 7, 2021
Appeal of: Glenn Makela : 
                            : 
Reeves Family Real Estate, L.P., Select : 
Sites, L.P., and Pohlig Builders, LLC : 
                            : 
                   v.                  : 
                            : 
Board of Supervisors of Schuylkill : 
Township and Glenn Makela : 
                            : 
Appeal of: Board of Supervisors of : 
Schuylkill Township : 
                            : 
Reeves Family Real Estate, L.P., Select : 
Sites, L.P., and Pohlig Builders, LLC, : 
                            : 
                 Appellants       : 
                            : 
                   v.                  : 
                            : 
Board of Supervisors of Schuylkill : 
Township and Glenn Makela : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE WOJCIK                  FILED: April 13, 2022

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

The Board of Supervisors (Board) of Schuylkill Township (Township) and Glenn Makela (Intervenor) appeal the order of the Court of Common Pleas of Chester County (trial court), which granted the appeal of Reeves Family Real Estate, L.P., Select Sites, L.P., and Pohlig Builders, LLC (together, Applicants), and reversed and remanded the Board's decision to deny Applicants' application for tentative approval of a Planned Residential Development (PRD). Applicants filed a cross-appeal on the remand issue.[2] Per this Court's order dated July 2, 2020, the parties were directed to address whether the January 14, 2020 trial court order is a final, appealable order. Further, per this Court's order dated June 21, 2021, we granted permission for the parties to file supplemental briefs, which we now consider along with the record and briefs already filed. As to the jurisdictional issue, we hold that the trial court's order is a final, appealable order, pursuant to Pa. R.A.P. 311(f). On the merits, we reverse and remand to the trial court to reinstate the Board's order that denied Applicants' PRD application.

As summarized by the Board, Reeves Family Real Estate, L.P. is the title owner of a parcel containing 65.751 acres located in Schuylkill Township, Chester County. Select Sites, L.P. is the title owner of a contiguous parcel containing .9737 acres. Together, the two parcels, containing a total of 66.72 acres, comprise the property at issue here (Subject Property). Pohlig Builders, LLC, is the equitable owner of the Reeves parcel and the authorized agent for the Select Sites parcel. In 2018, Applicants submitted their PRD application that is the subject of this appeal to the Township, where Applicants sought to develop the Subject Property as 94 dwelling units. Reproduced Record (R.R.) at 8a-10a.

---

[2] Per this Court's Order dated August 11, 2020, the appeals and cross-appeal were consolidated for disposition.

2

The Subject Property is bordered on the eastern and southern edges by the Pickering Reservoir. A finger or stream of the reservoir bisects the Property from east to west. The stream is currently crossed at the western edge of the Property by a gravel road over a water culvert by way of an easement from Aqua America, Inc. The Subject Property is connected to Valley Forge Road (Pennsylvania Route 23) via a 50-foot panhandle, and the Property is located at the end of East Philip Drive, a cul-de-sac road. Both the panhandle and access to East Philip Drive are north of the stream, leaving approximately two-thirds of the Property to the south of the stream. R.R. at 9a, 167a.

Prior to their 2018 PRD application, Applicants submitted a 51-unit, single-family dwelling unit residential development plan, which they pursued from 2006 through 2009, and which the Board never approved. This plan (51 Lot Plan) remains in suspension following an open-ended extension agreement. Applicants could pursue the 51 Lot Plan if their PRD application is not approved. R.R. at 10a-11a.

After the suspension of the 51 Lot Plan and before the PRD application was filed, the Board and Applicants began discussing amending the Schuylkill Township Code (Code)[3] by enacting a PRD Ordinance[4] to establish a PRD Overlay District which would encompass the Subject Property. Pursuant to Article VII of the Pennsylvania Municipalities Planning Code (MPC),[5] the PRD Ordinance would establish certain development standards and conditions required for tentative

---

[3] Schuylkill Township, Chester County, Pa., Code, §§1-1-370.233 (2013).

[4] *See* PRD Ordinance, §§252-100 - 252-117, Appendix A, of the Code. R.R. at 632a-89a.

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §§10701-10713.

3

approval of a PRD application. When drafting the PRD Ordinance, the Board met and consulted with Applicants, the Planning Commission, the Historic Commission, and the Environmental Advisory Board. During these discussions, Applicants presented numerous plans that could be submitted for review under a PRD Ordinance, arriving at "Plan J," which was a rough template of the PRD application eventually submitted for consideration, after the PRD Ordinance was enacted. R.R. at 13a-14a.

In 2013, the Township held three public hearings on the proposed PRD Ordinance, during which Applicants presented Plan J as an example of a plan that could be reviewed under the proposed PRD Ordinance, if enacted. After public hearings, the Board enacted the PRD Ordinance, including Appendix A, on November 20, 2013. R.R. at 632a-89a. One month later, the Board amended the zoning map to designate the Subject Property as being within the newly established PRD Overlay District. Although the Board discussed Plan J as part of its review and enactment of the PRD Ordinance, it did not approve Plan J or any other plan when it enacted the PRD Ordinance. The Board stated that any tentative plans would need to be submitted for review and approval, subject to public hearings, other studies, and reviews required by the MPC and the PRD Ordinance. *Id.* at 14a-15a.

Five years elapsed between the enactment of the PRD Ordinance and Applicants' submission of their PRD application in 2018. After Applicants submitted their PRD application, the Board held public hearings on April 2, April 30, May 9, May 10, May 25, and May 31, 2018.[6] Several neighbors were granted party status during the hearings, including Intervenor. R.R. at 16a-17a.

---

[6] The hearing that began on May 31, 2018, did not conclude until the early morning of June 1, 2018, and is referred to as the May 31st hearing.

At the hearings, Applicants presented their PRD application, which was similar in many respects to Plan J. Applicants sought to develop a cluster residential plan, age-targeted at empty-nesters, comprised of 94 dwellings, with 10 new homes and 1 existing home on the northern portion of the Subject Property, and 80 new and 3 existing dwellings on the southern portion. Applicants proposed a controlled, gated access onto East Philip Drive, to provide a second entrance/exit to the Subject Property. Applicants also proposed the development of an improved culvert crossing, to provide for travel between the northern and southern portions of the Property. Applicants also sought relief from the Township's Stormwater Ordinance,[7] to permit an alternative management approach. In support of their PRD application, Applicants presented testimony from four engineers and the developer, Mr. Pohlig, along with numerous documentary exhibits. In opposition to the PRD application, neighboring parties/objectors presented testimony from four engineers and a neighbor, along with documentary evidence. R.R. at 17a-19a.

On July 30, 2018, the Board issued a decision containing 154 findings of fact, 9 conclusions of law, and a discussion. R.R. at 8a-55a. The Board, by a vote of 3-2, with two commissioners dissenting, denied Applicants' PRD application because it did not comply with Sections 252-102(B),[8] 252-104(C)(1),[9] and 252-

---

[7] Schuylkill Township Code, §§310-101-310-907.

[8] Section 252-102(B) of the PRD Ordinance provides in relevant part:

> B. The tract for any planned residential development shall consist of a contiguous area with a minimum land area of 60 acres and with not less than two points of access to public roads.

[9] Section 252-104(C)(1) of the PRD Ordinance provides:

**(Footnote continued on next page…)**

5

113(B)(2), (4), and (5) of the PRD Ordinance.[10]  The Board held that the PRD application did not comply with Section 252-102(B) of the PRD Ordinance because,

(1)     Traffic impact study. The applicant shall submit a traffic impact study, prepared by a trained traffic consultant, following current PennDOT guidelines for such studies.  The study shall identify any proposed improvements which would be required to obtain any PennDOT permits necessary for construction and occupancy of the PRD.  The study area shall include any intersections identified by PennDOT regulations and/or policies as needing to be studied in order to obtain any permit or approval required by PennDOT.

[10] Sections 252-113(B)(2), (4), and (5) of the PRD Ordinance provide:

B. Findings.  The grant or denial of tentative plan approval by official written communication shall include not only conclusions but also findings of fact related to the specific proposal and shall set forth the reasons for the grant, with or without conditions, or for the denial, and said communication shall set forth with particularity in what respects the development plan would or would not be in the public interest, including but not limited to findings of fact and conclusions on the following:

* * *

(2)     The extent to which the development plan departs from zoning and subdivision regulations otherwise applicable to the subject property, including but not limited to density, bulk and use, and the reasons why such departures are or are not deemed to be in the public interest;

* * *

(4)     The physical design of the development plan and the manner in which said design does or does not make adequate provision for public services, provide adequate control over vehicular traffic, and further the amenities of light and air, recreation and visual enjoyment;

**(Footnote continued on next page…)**

6

although the Subject Property had two points of access, by way of the entrance to Valley Forge Road and the gated entrance to the East Philip Drive cul-de-sac, the unique topography of the site effectively denied two points of access to the residents in the southern two-thirds of the property. The Board found that the vast majority of residences on the southern portion (83 residences or 88% of the 94 total residences) would have only one effective means of accessing public roads from their lots, namely over the proposed new culvert crossing. The Board found that "[t]here is no competent evidence of record, deemed credible by the Board, by which Applicants have established that the proposed development will have minimal impact on fire and other emergency services provided within the Township." R.R. at 26a. Relatedly, the Board found that the single culvert crossing would substantially restrict and preclude emergency vehicle access to the majority of units in the southern portion, and, as such, constituted an abnormal adverse effect of the plan. The Board found that another existing gravel driveway crossing the culvert did not provide a second suitable emergency access, leaving only a single access point for the majority of residents in the southern portion. The Board noted that, although Applicants' proposal to add sprinklers to the units on the southern portion would somewhat ameliorate fire safety concerns, it would not suitably address health or other public safety concerns. Because the PRD application lacked two effective points of access to public roads for the majority of units in the southern portion, the Board concluded that the PRD application violated the public safety and public interest concerns for the health, safety, and welfare of its residents under Sections 252-113(B)(2) and (4) of the PRD Ordinance. R.R. at 26a, 33a-40a.

---

(5)     The relationship, beneficial or adverse, of the proposed planned residential development of the neighborhood in which it is proposed to be established[.]

7

The Board further found that the PRD application's proposed gated access to East Philip Drive violated Section 252-113(B)(5) of the PRD Ordinance because of the adverse impact on the residences on the existing cul-de-sac. R.R. 24a-25a. The Board found that the connector to East Philip Drive would not function as a driveway but would instead "provide a through-way for all traffic" to the Subject Property, and would adversely affect the residents of East Philip Drive, whose cul-de-sac road would now serve as an access road for the Subject Property. *Id.* at 25a. The Board also found that the proposed gated access "has not been evaluated or approved by the police, fire companies, local ambulance companies or other emergency services provided in the Township." *Id.* at 26a.

The Board also denied the PRD application because Applicants failed to present a traffic impact study compliant with Section 252-104(C)(1) of the PRD Ordinance. Specifically, the Board objected that the traffic impact study was based on traffic counts that were more than 10 years old. The Board also found Applicants' traffic engineer's testimony not credible based on his "educated guess" that only 22% of traffic entering or exiting the development would use the gated East Philip Drive access. R.R. at 24a-25a, 33a, 38a, 42a.

Applicants appealed the Board's denial to the trial court, which took no additional evidence, but did permit Intervenor to present argument on legal issues that he had not formally presented to the Board. In an order and decision dated January 14, 2020, the trial court sustained Applicants' land use appeal, reversed the Board's decision, approved the PRD application, and remanded the case to the Board for consideration of "reasonable conditions for the tentative plan approval." R.R. at 452a-67a. The trial court found that the Board committed an error of law when it concluded that the PRD application failed to provide two access points to the tract,

8

as required by Section 252-102(B) of the PRD Ordinance. The trial court found that the Board erred by requiring two crossing points over the stream culvert, because that circumstance "only restricts movement *within the boundaries of the Property itself.*" *Id.* at 457a (emphasis in original). The trial court interpreted the plain language of Section 252-102(B) of the PRD Ordinance and the term "tract" as referring to the entire Subject Property, not to each individual dwelling unit. The trial court stated that "[t]he Board's true objection to the plan on this basis appears to be that a number of the proposed dwellings must utilize the same route in order to reach the two access points." *Id.* at 456a.

The trial court also rejected the Board's finding that Applicants' traffic study did not comply with Section 252-104(C)(1) of the PRD Ordinance. The trial court found that the traffic study complied with PennDOT requirements but that the Board rejected it anyway. The trial court held that the Board erred in rejecting the traffic study on PennDOT's behalf when PennDOT was satisfied with it. Further, the trial court held that the Board abused its discretion when it rejected the study based on Applicants' traffic engineer's random use of the phrase "educated guess" without considering the context of the extensive study and report. R.R. at 457a-59a.[11]

The trial court further found that the Board's public safety concerns as to the single culvert crossing and the East Philip Drive access failed to rise to the level of "very specific and exceptional," as required by the PRD Ordinance and governing case law. R.R. at 460a. The trial court noted that these two issues were present from the outset of the development process, and, although the Board had several years to raise objections, it failed to do so until now, raising them as a matter

---

[11] Neither the Township nor Intervenor appealed the traffic study issue to this Court, and, therefore, we will not address this issue further.

9

of public safety. The trial court noted that the Board failed to raise these issues with Applicants even though the parties worked closely together to draft the PRD Ordinance that specifically applies to the Subject Property. *Id.* at 459a-62a. The trial court found that "[t]he Board appears to be second-guessing its previous decision to adopt the Property as the site for the PRD Ordinance, and is couching its reconsideration in newly[-]found terms of public safety." *Id.* at 462a. Thus, the trial court held that "under the circumstances present here, the Board erred as a matter of law in asserting its 'public interest safety' objections." *Id.*

The trial court also addressed Intervenor's objections to road widths and classifications, which were based on the application of the Township's Subdivision and Land Development Ordinance (SALDO)[12] to the PRD application. R.R. at 463a-66a. The trial court reviewed *Board of Supervisors of Charlestown Township v. West Chestnut Realty Corporation*, 532 A.2d 942 (Pa. Cmwlth. 1988), and Section 705(h) of the MPC, 53 P.S. §10705(h), and held that the SALDO standards not specifically incorporated into the PRD Ordinance do not apply to this PRD application. In this case, Applicants and the Township reviewed the SALDO and the proposed PRD Ordinance in detail, indicating which portions of the SALDO would be included in the PRD Ordinance and which would not. The trial court held:

> If it was the intent of the Board to have the entirety of the Township's SALDO apply to the PRD, then there would have been no need for the committee drafting the PRD Ordinance to study the SALDO in detail and determine which elements thereof were to be incorporated into the PRD Ordinance. For that reason, the court concludes that the provisions of the SALDO which are not present in the PRD Ordinance do not apply to this PRD pursuant to 53 P.S. §10705[(h)].

---

[12] Schuylkill Township, Chester County, Pa., SALDO, §§320-1-320-75 (1996). R.R. at 484a-631a.

10

R.R. at 464a.

Intervenor also argued that the Valley Forge Road entrance to the PRD, the internal loop road, and East Philip Drive should be classified as secondary roads and not residential roads. As a secondary road, the Valley Forge Road entrance should be 60-feet-wide under the PRD Ordinance, and as it is only 50-feet-wide, Intervenor argues that the PRD application should be rejected. The trial court disagreed, and held that the roads were properly classified as residential streets, and, thus, did not violate the PRD Ordinance. R.R. at 464a-66a.

The Township and Intervenor appealed the trial court's decision to this Court. Applicants filed a cross-appeal on the remand issue only.[13]

We first address the jurisdictional issue, that is, whether the trial court's January 14, 2020 order is a final order subject to appeal. Applicants and the Board both argue that the trial court's order is appealable pursuant to Pa. R.A.P. 311(f), and cases interpreting that rule. Intervenor did not present argument on this issue. Pa. R.A.P. 311(f) states:

> **Administrative remand.**—An appeal may be taken as of right from: (1) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion; or (2) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed.

---

[13] "Because the parties presented no additional evidence after the [Board's] decision, our review is limited to determining whether the [Board] committed an abuse of discretion or an error of law." *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1121 n.3 (Pa. Cmwlth. 2017) (citation omitted).

11

Applicants and the Board agree that where a local government agency must engage in fact-finding, administrative discretion is involved, and, thus, the order is not a final, appealable order, citing *Arguelles v. Pennsylvania Board of Probation and Parole*, 892 A.2d 912, 914 (Pa. Cmwlth. 2006). Applicants and the Board also agree that the trial court's order approving the PRD application decided all of the issues of contention. However, Applicants and the Board further argue that where, as here, the trial court remanded the matter to the Board to adopt "reasonable conditions" without revealing or describing what those reasonable conditions should include, it deprived the Board of the authority to exercise administrative discretion. The Board argues that, here, after the remand to adopt reasonable conditions, a party aggrieved by those conditions would lack the ability to appeal from the already approved PRD application; thus, the issue would evade appellate review. The Board argues, therefore, that the trial court's order is final and appealable under Pa. R.A.P. 311(f)(2), relying on *Schulteis v. Board of Supervisors of Upper Bern Township, Berks County*, 727 A.2d 145, 148 (Pa. Cmwlth. 1999), and *Vanvoorhis v. Shrewsbury Township*, 176 A.3d 429, 432-33 (Pa. Cmwlth. 2017).

Applicants agree that the trial court's order is final and appealable under Pa. R.A.P. 311(f)(2), *Schulteis*, and *Vanvoorhis*. Applicants argue that the trial court's remand for adoption of reasonable conditions is not permitted under Section 1006-A(c) of the MPC,[14] when the trial court approved the PRD application in its entirety, but did not approve some elements and refer others to the Board for further proceedings. Applicants argue that the legality of the trial court's remand would become moot after the remand occurred, thus evading appellate review.

---

[14] Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11006-A(c).

We agree with Applicants and the Board that the trial court's order is final and appealable under Pa. R.A.P. 311(f)(2), because the adoption of reasonable conditions to the approved PRD application on remand would evade review if an immediate appeal was not allowed. In *Schulteis*, 727 A.2d at 148, this Court granted immediate review where the trial court decided the merits before remanding the matter. In *Vanvoorhis*, 176 A.3d at 432-33, this Court held that an order that settles the only point of contention between the parties before remand is immediately appealable. We find the trial court's order here to be similar to, and governed by, our Court's interpretation of Pa. R.A.P. 311(f)(2) in *Schulteis* and *Vanvoorhis.*

As to the merits, the Board, joined by Intervenor, presents two questions for our review: (1) whether the trial court erred or abused its discretion when it reversed the Board's denial of the PRD application, when the Board's public safety reasons for its denial were stated with "particularity," and are of a "very specific and exceptional nature"; and (2) whether the trial court erred or abused its discretion in its interpretation of Section 252-102(B) of the PRD Ordinance, which requires the tract to have at least two points of access to public roads.[15]

The Board argues that its public safety objections are stated with particularity, are of a very specific and exceptional nature, and have a legitimate basis in law and fact, and thus, should be upheld. In support, the Board cites *Appeal of Molnar*, 441 A.2d 487, 489 (Pa. Cmwlth. 1982), which held that "[i]n the absence of public interest objections of a substantial, specific and exceptional nature," the borough abused its discretion in denying tentative approval to the developer's PRD application. In further support, the Board cites *Doran Investments v. Muhlenburg Township Board of Commissioners*, 309 A.2d 450, 459 (Pa. Cmwlth. 1973), for the

---

[15] For clarity, we combined the Board's Statement of Questions C and D in its brief.

13

proposition that, even when a plan conforms with all aspects of a relevant ordinance, a board may deny its approval where circumstances are "so exceptional as to support a conclusion that the plan in one or more respects, stated 'with particularity' would not be in the public interest." In *Doran*, although our Court held that the governing body abused its discretion when it denied tentative approval of the PRD application based on general density and traffic concerns, we further explained:

> We do not decide that in no case may a conforming plan be denied tentative approval; for it is possible that the circumstances of a particular matter might be so exceptional as to support the conclusion that the plan in one or more respects, stated 'with particularity', would not be in the public interest.

*Id.* at 459-60.

The Board acknowledges that it cannot point to any court decisions where this Court has upheld a board's public interest objections when a PRD application otherwise conformed with the relevant ordinance. The Board argues, however, that this case presents just such an unusual circumstance, because of the particular and exceptional safety concerns in the PRD application. The Board further argues that this case is distinguishable from *Doran* and its progeny, when the PRD applications in those cases were rejected because they were not consistent with the municipality's comprehensive plan, or other generalized concerns. The Board argues that this case is distinguishable because the Board gave particular public interest objections based on the unique characteristics of the Subject Property, and not based on its nonconformance with the comprehensive plan.

The Board argues that it denied tentative approval of the PRD application, setting forth with "particularity" in what respects the PRD application would not be in the public interest, based on Sections 252-113(B)(2), (4), and (5) of

14

the PRD Ordinance. Specifically, the Board found that the PRD application was not in the public interest under Section 252-113(B)(2) of the PRD Ordinance, because it failed to comply with Section 252-102(B) of the PRD Ordinance and would create a public safety hazard. Section 252-102(B) of the PRD Ordinance provides that "[t]he tract for any planned residential development shall consist of a contiguous area with a minimum land area of 60 acres and with not less than two points of access to public roads."

Regarding access points, the Board found that 83 of the 94 residences in the southern portion of the tract would only be accessible by the one single-access bridge road over the culvert that divides the Property. The Board found that forcing all traffic, whether residential or emergency, that requires access to the southern portion of the Subject Property, to cross the ravine by the proposed bridge posed legitimate and substantial public safety concerns. R.R. at 38a-41a. The Board found the public safety concerns to be substantial due to the unique natural, physical characteristics of the Subject Property, namely, the stream bisecting the property and the single bridge culvert road over the stream. The Board found that, if the single bridge access was blocked, the residences in the southern portion would be inaccessible, leading it to conclude that the PRD application violated Section 252-113(B)(4) of the PRD Ordinance by failing to adequately provide public services to the southern portion of the property. *Id.*

The Board found that "the specific layout and access design for the PRD [application] creates a public health, safety and welfare risk as to the [] 83 dwelling units on the southern portion of the Subject Property, for which only one means of access is proposed." R.R. at 26a. The Board argues that the trial court abused its discretion when it rejected this finding and entered its own finding that

15

the existing, dilapidated driveway crossing could be used as a secondary emergency access route. *Id.* at 461a. The Board argues that the trial court also erred by finding the Board's safety concerns not legitimate and, therefore, not very specific and exceptional. The Board objects to the trial court's reasoning that if these issues truly affected the well being of future Township residents, it would have brought them to Applicants' attention at some prior point. The Board argues that the trial court erred when it precluded the Board from raising public safety concerns that it had not raised prior to the enactment of the PRD Ordinance. The Board characterizes the trial court's decision as effectively enforcing unlawful contract zoning when it precluded the Board from considering public safety concerns in the PRD application.

The Board also argues that the trial court improperly dismissed the Board's finding that the gated access to East Philip Drive would have a specific adverse impact on the surrounding neighborhood. The Board argues that, by breaching the cul-de-sac, Applicants will be changing the classification from a single-access cul-de-sac to a through road, creating a dramatic adverse change in that neighborhood. The Board concluded that this aspect of the PRD application violated Section 252-113(B)(5) of the PRD Ordinance, therefore justifying its denial.

Intervenor's argument focuses on, and echoes, the Board's argument that the single culvert crossing failed to make adequate provision for public services to the southern portion of the Subject Property, and that the denial is justified under Section 252-113(B)(4) of the PRD Ordinance.

Applicants agree that the Board's denial of the PRD application based on public interest concerns must be specific and exceptional, but they argue that the Board failed to provide adequate reasons. In support, Applicants also cite *Doran* and its progeny, arguing that in the 47 years since *Doran* raised the possibility of a

16

PRD application being denied on public interest grounds, no case has actually sustained denial of a PRD application based on public interest grounds. Applicants respond that, in those cases, as in this case, the Board raised public interest issues, but those issues did not rise to the level of the unexpected or exceptional.

Applicants focus on the legislative history of the Township's drafting and adopting its PRD Ordinance to reject further the Board's public safety concerns with their PRD application. Although the Board did not approve Plan J or any specific plan when it adopted the PRD Ordinance, Applicants respond that the Board was aware of, and embraced, the development of the Property consistent with Plan J. Applicants respond that during the process of adopting the PRD Ordinance, the Board understood and accepted that the two access points to the Subject Property would be by way of the panhandle to Valley Forge Road and through gated access onto East Philip Drive. Applicants argue that the Board accepted that the new road crossing over the culvert would provide access to the southern portion of the property. Applicants argue that the Board also accepted that the PRD Ordinance and Appendix A would permit the design of a PRD on the Subject Property consistent with Plan J. Because the two means of access and the culvert crossing were known components of Plan J, Applicants argue that the public interest concerns articulated by the Board were expected and, therefore, not exceptional. Applicants argue that *Doran* and the cases following it do not permit the Board to make an *ad hoc* denial of their PRD application, which they believe complies with the PRD Ordinance, under the guise of the Township's general duty to protect the health, safety, and welfare of its residents.

Applicants argue that some of the Board's descriptions of the culvert crossing are inaccurate. Applicants aver that the existing culvert crossing and the

17

planned upgraded crossing are not bridges, but rather roadways crossing fill over a culvert. Applicants argue that the Board erred by confusing emergency access under the fire code with regular traffic access. Applicants argue that the Board erred when it determined that the existing culvert crossing failed to provide emergency access, when the PRD Ordinance had no such requirement. Applicants further reject the Board's argument that the trial court approved contract zoning through the PRD Ordinance. Applicants argue that the Board looked at the Property it intended to rezone, drafted the PRD Ordinance to meet the vision the Board had for the Property, and then adopted the PRD Ordinance including design standards to permit the Property to be developed consistent with Plan J.[16]

As to its next issue, the Board objected to the trial court's interpretation of Section 252-102(B) of the PRD Ordinance, which requires the tract to have at least two access points to public roadways. The Board found that the residences in the southern portion of the property, comprising 88% of the total residences on the Property, could reach the two access points to the development only by using the single culvert crossing. Therefore, the Board concluded, the majority of the residents in the PRD would have only one effective access point, in violation of Section 252-102(B) of the PRD Ordinance. R.R. at 38a.

---

[16] Applicants argue in their supplemental brief that counsel for the Board made a misleading statement during argument before this Court when he stated that, at one time, the PRD application included two crossing points over the culvert, and that Applicants later removed the second crossing from their PRD application. The Board responded in its supplemental brief that counsel made no such statement during argument, and, even if he had, it had no bearing on the Board's decision, because the PRD application as submitted showed only one crossing point over the culvert. R.R. at 197a-98a. We have reviewed the parties' arguments and the record, and we conclude that Applicants were not prejudiced by any statements made by the Board's counsel during argument, as our analysis is based on Applicants' final PRD application in the record.

18

The Board argues that the trial court erred as a matter of law by not deferring to the Board's reasonable interpretation of its own ordinance, citing in support *Johnston v. Upper Macungie Township*, 638 A.2d 408, 411 (Pa. Cmwlth. 1994). The Board argues that its interpretation of the PRD Ordinance, requiring two access points for all residences in the plan, was reasonable in light of the Board's legal mandate to maintain the health and welfare of its citizens.

Intervenor also argues the trial court erred as a matter of law in interpreting the PRD Ordinance as requiring two access points for the tract, rather than two access points for all residences in the tract. Intervenor points to the stream that divides the Property in two as a natural feature that creates public safety concerns for the majority of residents. Intervenor argues that the Board correctly interpreted Section 252-102(B) of the PRD Ordinance, and rejected the PRD application on that basis.

Applicants respond that the Board erred, and the trial court correctly found that the PRD application met Section 252-102(B)'s requirement that the tract have two points of access. Applicants note that the Board clearly understood where the two points of access would be located when they made the Property a tract in the PRD district. Applicants argue that land use ordinance requirements may not be extended by implication, citing *Fidler v. Zoning Board of Adjustment of Upper Macungie Township*, 182 A.2d 692, 695 (Pa. 1962). Applicants argue that the Board committed an error of law when it interpreted the Ordinance to require two points of access for each unit to roads within the tract, rather than to public roads to and from the tract.

As to the primary issue regarding access to the majority of dwelling units in the southern portion of the Subject Property, we hold that the trial court erred

19

when it substituted its findings for the Board's. The trial court must accept the credibility determinations made by the Board, which hears testimony, evaluates credibility, and serves as the fact finder. *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006). The trial court may not "substitute its judgment on the merits" for that of the Board. *Id.* Assuming the record demonstrates that substantial evidence supports the Board's findings, the trial court is bound by those findings. *Id.*

Here, the Board made numerous specific findings that the single culvert crossing in the PRD application was not in the public interest. R.R. at 38a-40a. We agree with the Board that its denial of the PRD application was "not premised on a mere inconsistency with a comprehensive plan or the fact of increased density," R.R. at 41a, which would not be sufficient, but rather based on findings stated with "particularity" regarding "exceptional" circumstances that the PRD application would not be in the public interest. *Doran*, 309 A.2d at 459. Following *Doran,* our Court continued to apply the standard, that a board's public interest objections must be stated with particularity, and must contain "objections [] of a very specific and exceptional nature and have a legitimate basis in law and fact." *Michael's Development Company, Inc. v. Benzinger Township Board of Supervisors*, 413 A.2d 743, 746 (Pa. Cmwlth. 1980). Our Court continued to apply the same standard in *Appeal of Molnar*, 441 A.2d at 491. Here, the Board's findings are supported by substantial evidence in the record, based on testimony from its own experts, and on testimony from Applicants' builder, Mr. Pohlig, that the existing culvert crossing is not suitable for, or intended to be used as, an emergency access for fire, police, or other first responders. R.R. at 40a, 90a. We therefore conclude that the trial court erred when it held that the Board's denial failed to meet this standard.

20

As it relates directly to the particular public interest grounds discussed above, we further conclude that the trial court erred in interpreting Section 252-102(B) of the PRD Ordinance, when it limited the requirement that the "tract" contain "not less than two points of access to public roads" to the Subject Property as a whole, and ignored the legitimate, specific safety concerns for 88% of residences in the southern portion of the tract, where access to public roads would be limited by the ability to cross the culvert at only one point. "Generally, deference to a local zoning board's interpretation is warranted unless shown to be clearly erroneous." *Gouwens v. Indiana Township Board of Supervisors*, 260 A.3d 1029, 1037 (Pa. Cmwlth. 2021). The interpretation of an ordinance is a question of law, over which this Court's review is plenary, and which "begins with examination of the text itself." *Id.* at 1038. "Tract" is not defined in the PRD Ordinance. It is a rule of statutory construction that where terms are not otherwise defined in a statute, "[w]ords and phrases shall be construed according to their common and approved usage[.]" Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1903. We generally use dictionaries as source material for determining the common and approved usage of a term. *Gmerek v. State Ethics Commission*, 751 A.2d 1241, 1260 (Pa. Cmwlth. 2000), *aff'd*, 807 A.2d 812 (Pa. 2002). "Tract" is defined as "a specified parcel of land." Black's Law Dictionary 1720 (10th ed. 2014). Although the Statutory Construction Act of 1972 is "not expressly applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike." *Geerling Florist, Inc. v. Board of Supervisors of Warrington Township*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020).

Considering this definition, we cannot conclude that the Board erred when it interpreted "tract" in Section 252-102(B) of the PRD Ordinance, as applied

to the Subject Property, to require two points of access to public roads for the majority of residences in the southern portion of the Subject Property, which the PRD application did not provide. We cannot conclude that the Board's interpretation of Section 252-102(B) of the PRD Ordinance was clearly erroneous, when it was based on the unique configuration of the Subject Property.[17]

Because we reverse the trial court for the reasons already discussed, we need not reach the Board's argument that the trial court erred when it rejected the Board's denial of the PRD application based on the adverse effects of the East Philip Drive gated connector on the neighbors residing on this cul-de-sac, in violation of Section 252-113(B)(5) of the PRD Ordinance. We are mindful that "[t]he rejection of a plan may stand, however, if validly supported by even one of several objections." *Robal Associates, Inc. v. Board of Supervisors of Charlestown Township*, 999 A.2d 630, 635 (Pa. Cmwlth. 2010). Further, because we reverse the trial court for the reasons already discussed, we need not reach Intervenor's arguments that the trial court erred when it determined that certain elements of the PRD application did not violate the PRD Ordinance, namely, the limitation on the number of homes on a loop road, the maximum length of the access to the loop road, and width of access roads into the Subject Property. *Id.* Finally, because we reverse the trial court for the reasons already discussed, we need not reach Applicants' objections to the trial court's remand.

---

[17] We note further that the trial court erred when it concluded that the Board "appears to be second-guessing its previous decision to adopt the [Subject] Property as the site for the PRD Ordinance, and is couching its reconsideration in newly[-]found terms of public safety." R.R. at 462a. We find no basis for the trial court's conclusion in the record, and we note that the Court "will not inquire into the motives of a municipal legislative body" in making zoning decisions. *Streck v. Lower Macungie Township Board of Commissioners*, 58 A.3d 865, 879 (Pa. Cmwlth. 2012).

Accordingly, we reverse and remand to the trial court to reinstate the Board's order that denied Applicants' PRD application.[18]

_____
MICHAEL H. WOJCIK, Judge

[18] Applicants' April 11, 2022 Motion to file a Post-Submission Communication pursuant to Pa. R.A.P. 2501(a), in the form of permits issued for the repair, reconstruction, and paving of the existing site driveway, is dismissed as moot.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reeves Family Real Estate, L.P., Select : 
Sites, L.P. and Pohlig Builders, LLC : 
                                          : 
               v. : No. 378 C.D. 2020
                        : No. 380 C.D. 2020
Board of Supervisors of Schuylkill : No. 712 C.D. 2020
Township and Glenn Makela : No. 713 C.D. 2020
                                          : 
Appeal of: Glenn Makela : 
                                          : 
Reeves Family Real Estate, L.P., Select : 
Sites, L.P., and Pohlig Builders, LLC : 
                                          : 
               v. : 
                                            : 
Board of Supervisors of Schuylkill : 
Township and Glenn Makela : 
                                          : 
Appeal of: Board of Supervisors of : 
Schuylkill Township : 
                                          : 
Reeves Family Real Estate, L.P., Select : 
Sites, L.P., and Pohlig Builders, LLC, : 
                                          : 
                     Appellants : 
                                          : 
               v. : 
                                            : 
Board of Supervisors of Schuylkill : 
Township and Glenn Makela : 

# **O R D E R**

AND NOW, this 13th day of April, 2022, the order of the Chester County Court of Common Pleas dated January 14, 2020, is REVERSED, and the

above-captioned matters are REMANDED to that court for the reinstatement of the Board of Supervisors of Schuylkill Township's July 30, 2018 Order, which denied the application of Reeves Family Real Estate, L.P., Select Sites, L.P., and Pohlig Builders, LLC, for tentative approval of a Planned Residential Development. The Motion of Reeves Family Real Estate, L.P, Select Sites, L.P., and Pohlig Builders, LLC, to file a post-submission communication pursuant to Pa. R.A.P. 2501(a) is DISMISSED as moot.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge